Argued and submitted January 13, 2005, reversed and remanded for
reconsideration January 18, 2006

# Brenda C. GOIN,
*Petitioner,*

*v.*

# EMPLOYMENT DEPARTMENT
## and Bayliner Marine Corp.,
*Respondents.*

## 03-AB-2965; A124003

126 P3d 734

Suzanne B. Chanti argued the cause for petitioner. With her on the brief was Walters Chanti & Zennaché, P.C.

Richard D. Wasserman waived appearance for respondent Employment Department.

No appearance for respondent Bayliner Marine Corp.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

ORTEGA, J.

---

* Haselton, J., *vice* Ceniceros, S. J.

**ORTEGA, J.**

Claimant seeks review of an order of the Employment Appeals Board (EAB) denying her claim for unemployment insurance benefits after she was discharged by employer. The issue is whether claimant engaged in misconduct when, mistakenly believing that employer would obtain information directly from her doctor, she failed to provide employer with documentation of her need for additional medical leave. Because EAB's findings do not support its conclusion that claimant engaged in misconduct rather than a good faith error, we reverse and remand.

We do not understand claimant to assign error to EAB's findings of fact. Accordingly, unless otherwise noted, we draw our statement of facts from EAB's order.

Claimant requested medical leave on June 25, 2003, and provided employer with a doctor's note stating that she needed 60 days' medical leave. Shortly after her leave began, employer informed claimant by letter (the July 14 letter) that it would expect her to return to work at the end of the 60-day leave period or provide medical documentation that she could not return. Employer's letter also required claimant to provide information on her medical status every week. According to the record, employer initially denied claimant leave under the Family and Medical Leave Act (FMLA) because of delays in obtaining claimant's doctor's certification of her eligibility for such leave, but claimant's doctor provided such certification in late July.

Employer's human resources manager, Pasquini, wanted a second opinion and made arrangements for a second doctor, Dr. Tripuaneni, to evaluate claimant's FMLA eligibility. At Pasquini's direction, claimant saw Tripuaneni on August 8. Suspecting that claimant might be suffering from sleep apnea, Tripuaneni referred her to a specialist for further testing and instructed claimant not to drive or return to work until she received the results from the sleep apnea tests. During the August 8 appointment, claimant signed forms authorizing the doctor to release medical information to employer.

On August 12, claimant spoke with Pasquini. She told him about the sleep apnea testing, and he indicated that he would need documentation regarding that treatment. He also told claimant that he would speak to Tripuaneni about claimant's diagnosis and did, in fact, confirm with Tripuaneni's office that claimant might have sleep apnea.

Claimant could not obtain an appointment with the sleep apnea specialist until September 3, after the expiration of her original leave. Because Tripuaneni had told her not to work or drive until she received the results of her sleep apnea test, she did not report for work at the end of the 60-day period (August 25) as originally instructed by employer. Because she also assumed (incorrectly) that Pasquini would obtain any necessary information from Tripuaneni, she did not provide documentation of his instructions. Nor, according to EAB's findings, did she contact employer after August 12 to provide updates about her medical status. As a result, employer discharged claimant on August 28 because she had failed to report for work or provide documentation of her need for leave.

Claimant then applied for unemployment insurance benefits, which were allowed by the authorized representative of the Employment Department (the department). On employer's request for a hearing, an administrative law judge (ALJ) determined that claimant was not discharged for misconduct and likewise allowed benefits. The authorized representative reasoned, "Claimant's failure to report for work or to contact her employer was an isolated instance of poor judgment. She believed that her supervisor knew she would not be coming to work because of their conversation two days before."[1] The ALJ likewise explained that claimant's understanding that employer would follow up with

---

[1] Claimant maintained, and employer denied, that she had called employer on August 22, two days before the expiration of her leave. The authorized representative apparently believed that claimant had called on August 22, and the ALJ so found. The representative's decision refers to a call to "her supervisor" on "June 22, two days before [claimant] was due back," in which claimant "explain[ed] that the doctor was sending her for more tests" and the supervisor "told her that he already knew about it." It appears that that was intended to be a reference to August rather than June, since claimant's leave had not yet begun on June 22. The ALJ specifically refers to a conversation with "employer" on August 22, in addition to the conversation with Pasquini (referred to as "employer") on August 12. EAB, however,

Tripuaneni was "not unreasonable" and that her actions "were not either the willful or wantonly negligent disregard of employer's interests necessary to establish disqualifying work connected misconduct."[2]

EAB, however, in addressing employer's appeal from the ALJ's decision, concluded that claimant was discharged for misconduct and therefore was not eligible for benefits. EAB reasoned that employer had a reasonable right to expect claimant either to return to work or to provide documentation of her need for additional leave and that claimant knew of employer's expectation. EAB concluded that claimant's failure to provide the requested documentation from Tripuaneni constituted misconduct:

> "Claimant did not provide the information to the employer because she assumed Pasquini would receive that information from [Tripuaneni] because she had signed a medical release with [Tripuaneni's] office and because Pasquini told her that he would be speaking with [Tripuaneni's] office. However, claimant's assumption was not well-founded, given Pasquini's direction to her and the [July 14 letter] reminding of the need for such documentation. We are persuaded that claimant's failure to obtain the medical documentation from * * * Tripuaneni's office demonstrated claimant's indifference to the employer's need for documentation of her medical status. We are persuaded that claimant's failure to provide the employer with documentation regarding her need to remain off work amounted to wanton negligence."

EAB went on to determine that claimant's conduct did not fall within the exceptions to misconduct as defined in the department's rules. It first concluded that the conduct was ongoing and repeated, not an isolated instance of poor

concluded that claimant's last conversation with employer before the expiration of her leave was the conversation with Pasquini on August 12.

[2] The ALJ made these findings about the alleged conversation on August 22, which EAB rejected:

"Claimant called employer on August 22, 2003. She was advised that her understanding that the doctor she had just seen [apparently, Tripuaneni] was not in fact an employer doctor and that she needed to get a statement from him that she could not return to work. Claimant understood from that conversation[,] however, that employer was in contact with the doctor and would get the information directly from the doctor. Employer did not attempt to get any information from the doctor."

judgment as had been determined by the authorized representative. It then decided that claimant's conduct did not result from a good faith error because, based on the July 14 letter and the August 12 conversation with Pasquini, she "could not have held a good faith belief that failing to return to work on August 25, or to provide the employer with additional medical documentation regarding her need to remain off work, was acceptable to the employer * * *."

In her petition for judicial review of that decision, claimant assigns error to EAB's conclusion that she was terminated for misconduct and offers several arguments in support of her position. We address two of those arguments. First, claimant argues that employer's expectations regarding medical certification were unreasonable because employer's requirements violated the FMLA. That argument was not raised before the department and therefore was not preserved for our review. *See Veselik v. SAIF*, 177 Or App 280, 288, 33 P3d 1007 (2001), *rev den*, 334 Or 121 (2002) (noting the necessity of preservation in judicial review of administrative proceedings). Second, claimant argues that any failure to comply with employer's expectations was merely a good faith error. Because we conclude that EAB's findings of fact do not support its legal conclusion that claimant engaged in wanton negligence, rather than a good faith error, we reverse and remand for reconsideration.

We review EAB's decision as an order in a contested case. ORS 657.282. We review EAB's findings of fact for substantial evidence and its legal conclusions for errors of law and substantial reason. ORS 183.482(8); *Freeman v. Employment Dept.*, 195 Or App 417, 421, 98 P3d 402 (2004). Our substantial reason review requires a determination of whether EAB's findings of fact logically lead to its conclusions of law. *Freeman*, 195 Or App at 424. A determination of whether a particular claimant's actions are "misconduct" disqualifying her from receiving unemployment insurance benefits involves an interpretation of department rules. *Jordan v. Employment Dept.*, 195 Or App 404, 408, 97 P3d 1273 (2004). In determining whether a claimant was discharged for misconduct, the department's authorized representative interprets the rules in the course of applying them, and that interpretation—not the interpretation of the ALJ or

EAB—is entitled to deference from this court.[3] *Id.; Johnson v. Employment Dept.*, 189 Or App 243, 248, 74 P3d 1159, *adh'd to as modified on recons*, 191 Or App 222, 81 P3d 730 (2003); *see also McPherson v. Employment Division*, 285 Or 541, 546-47, 591 P2d 1381 (1979) (explaining that the authorized representative is "the agency" for purposes of initial decisionmaking).

■    With those standards in mind, we turn to the applicable statutes and rules. Under ORS 657.176(2)(a), a claimant is disqualified from receiving benefits if she "[h]as been discharged for misconduct connected with work[.]" "Misconduct" is a delegative term, which requires the department to complete the legislature's value judgment. *Johnson*, 189 Or App at 248. The department has defined "misconduct" by rule:

> "(a)   * * * [A] willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or *wantonly negligent disregard of an employer's interest* is misconduct.
>
> "(b)   Isolated instances of poor judgment, *good faith errors*, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct."[4]

OAR 471-030-0038(3) (emphasis added). As we have previously noted, the rule is ambiguous as to whether a claimant who has engaged in "misconduct" under one subsection of OAR 471-030-0038(3) nonetheless remains eligible for benefits if OAR 471-030-0038(3)(b) applies. *See Freeman*, 195 Or App at 425.

---

[3] The decision-making process occurs as follows. First, an authorized representative examines the claim to determine if the claimant is subject to disqualification. ORS 657.176(1). If a party requests a hearing, then an ALJ conducts a hearing into whether the claimant is eligible for benefits. ORS 657.270. The ALJ's decision is then subject to the EAB's *de novo* review on the record. ORS 657.275.

[4] The department amended OAR 471-030-0038 effective December 19, 2004. Our references to the rule are to the version effective on the date that claimant was terminated, which is the version that the authorized representative, the ALJ, and EAB applied in this case.

As noted, in this case we have no agency interpretation of OAR 471-030-0038 to which we might defer. The authorized representative concluded that claimant had engaged in an isolated instance of poor judgment rather than misconduct (based, in part, on a finding that claimant had spoken with employer two days before she was due back at work—a finding that EAB rejected). The representative did not, therefore, reach the issues of good faith error or wanton negligence.

We turn to the question of whether EAB had substantial reason to conclude that claimant engaged in misconduct and not a good faith error. Claimant argues that her conduct was a good faith error based on her understanding that Pasquini was in contact with Tripuaneni. As noted, EAB found that claimant incorrectly assumed that employer would get information directly from Tripuaneni but concluded that she "could not have held a good faith belief" that failing to provide additional documentation was acceptable. In other words, EAB seems to have decided that claimant's actual belief was irrelevant because her belief was mistaken and she should have realized as much.

■    EAB's conclusion does not follow logically from its findings of fact. A "good faith error" logically involves some sort of mistake made with the honest belief that one is acting rightly. *See Webster's Third New Int'l Dictionary* 978 (unabridged ed 2002) (defining "good faith" as "a state of mind indicating honesty and lawfulness of purpose : belief in one's legal title or right : belief that one's conduct is not unconscionable or that known circumstances do not require further investigation : absence of fraud, deceit, collusion, or gross negligence"). Here, EAB found that claimant, with some reason, made an incorrect assumption. It did not find that she acted with a lack of honesty or belief in the rightness of her actions, nor did it find that she believed that she needed to investigate further to determine what information employer had already received from Tripuaneni and what information she needed to provide.[5] It follows that EAB's conclusion that

---

[5] The pertinent findings are as follows:

"During her appointment at Dr. Tripuaneni's office, claimant signed forms authorizing Dr. Tripuanani to release medical information to the employer.

claimant's conduct was not a good faith error lacks substantial reason.

The same is true of EAB's conclusion that claimant's conduct was "wantonly negligent." By rule, the department has defined "wantonly negligent" as "indifference to the consequences of an act * * * where the individual * * * is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee." OAR 471-030-0038(1)(b). Logically, "indifference" suggests that the individual does not care about the consequences of her conduct. *See Webster's* at 1151 (defining "indifferent" as "**2 a** (1) **:** that is looked upon as not mattering one way or another **:** that is regarded as being of no significant importance or value **:** that is viewed with neutrality * * * **3 a** (1) **:** marked by no special liking for or dislike of something * * * **b :** marked by a total or nearly total lack of interest in or concern about something **:** dully unconcerned or unfeeling").

Here, EAB found that "[c]laimant did not provide the employer with medical documentation regarding her need to be absent from work *because she assumed Pasquini would obtain that information from [Tripuaneni's] office.*" (Emphasis added.) EAB found that claimant was mistaken, not out of "lack of interest" but because she had authorized Tripuaneni to give information to employer and because

"* * * Dr. Tripuaneni told claimant not to drive or return to work until she had received the results from the sleep apnea test. * * *

"* * * Pasquini spoke to claimant again on August 12, 2003. * * * Pasquini told claimant that if she was going to be treated for sleep apnea, he would require documentation regarding that treatment. * * * Pasquini also told claimant that he would speak to Dr. Tripuaneni himself to obtain information regarding claimant's diagnosis. * * * Pasquini subsequently verified with Dr. Tripuaneni's office that claimant had an issue involving sleep apnea.

"* * * * *

"* * * Claimant did not report for work on August 25, 26, 27, or 28 because Dr. Tripuaneni had told her not to work or drive until she received the results of a sleep apnea test. * * * Claimant did not provide the employer with medical documentation regarding her need to be absent from work because she assumed Pasquini would obtain that information from the doctor's office. * * * Claimant did not contact the employer between August 12 and August 28, 2003, to advise of her medical status."

Pasquini had told her that he himself would contact the doctor. Claimant's honest and not entirely groundless mistake about employer's needs does not support the conclusion that she did not care about those needs. Thus, EAB's conclusion that claimant was "indifferen[t] to the employer's need for documentation" lacks substantial reason.

In short, EAB lacked substantial reason for its conclusion that claimant was discharged for misconduct. Accordingly, we must remand to EAB for reconsideration of its conclusions about the application of OAR 471-030-0038(3) to this case. As noted, the department has not yet determined whether claimant made a good faith error or was wantonly negligent under the facts as found by EAB. On remand, therefore, EAB may use any lawful means to ascertain the department's interpretation of its rules as they apply to this case. *Freeman*, 195 Or App at 424.

Reversed and remanded for reconsideration.