Argued and submitted January 19, violation of OAR 845-006-0345(11)(c) reversed and remanded for reconsideration; otherwise affirmed June 13, 2007

Ted PAPAS,
President;
John Papatheodorou,
Secretary;
and Downtown Delicatessen, Inc.,
dba Downtown Deli & Greek Cusina,
*Petitioners,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

Oregon Liquor Control Commission
OLCC-04-V-022, OLCC-04-V-022-A, OLCC-04-V-022-B;
A129769

161 P3d 948

Robert K. Udziela argued the cause and filed the briefs for petitioners.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

ORTEGA, J.

**ORTEGA, J.**

Petitioners are a Portland restaurant business and its corporate officers. The Oregon Liquor Control Commission (OLCC) issued a final order concluding that petitioners had mixed, served, or sold alcoholic beverages without a license, in violation of ORS 471.360(1)(b), and that, on each of two occasions, they had conducted a "drinking contest" of alcoholic beverages, in violation of OAR 845-006-0345(11)(c). Petitioners seek judicial review of the order, contending that, for various reasons, OLCC erred in concluding that they conducted drinking contests in violation of OAR 845-006-0345(11)(c). We review for substantial evidence, substantial reason, and errors of law. ORS 183.482(8)(a), (c); *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996). We reverse and remand for reconsideration.

Unless otherwise noted, the following pertinent facts are taken from the record and from OLCC's order and are undisputed. Petitioners operate the Downtown Deli and Greek Cusina in Portland. The restaurant features authentic Greek decor, food, language, music, dancing, and entertainment that incorporates Greek traditions. On weekend nights, petitioner Papas acts as a master of ceremonies for a stage show, which includes traditional Greek activities such as breaking plates, dancing, and drinking ouzo, a Greek liqueur. Patrons who are celebrating special occasions are invited to participate in a competition in which Papas places his finger over the pour spout of an unlabeled bottle of ouzo and "drizzles" or "dribbles" the liqueur directly into participants' mouths while the crowd counts. A count of 30 results in the participant receiving about half a shot of ouzo; the highest count any participant in the competition has ever achieved is 90. The participants are not charged for the ouzo that they drink during the competition. OLCC found that Papas "tries to provide a fun atmosphere with the ouzo contest, not to induce more drinking." Petitioners have been providing the described entertainment at the restaurant for 18 years.

Effective April 1, 2003, OLCC adopted a rule prohibiting what it describes as "high volume drinking practices." As pertinent here, OAR 845-006-0345(11)(c) prohibits

"[c]onducting, operating, organizing, or promoting any 'drinking contest' or 'drinking game' that is designed to increase consumption at an extraordinary speed, or in increased quantities, or in a more potent form."

According to the advisory committee that was appointed for the rulemaking proceeding, the rule was intended to address "free-pouring" of alcohol into a person's mouth and drinking games in which a person does not have control of her consumption, in which the reward is a shot of alcohol, or in which the quantity of alcohol consumed is itself the contest. However, the rule as adopted did not include any definitions or illustrations of prohibited conduct.[1]

In March 2004, after OLCC received an anonymous complaint, two OLCC compliance inspectors went to petitioners' restaurant to determine whether petitioners were conducting drinking contests. The investigators observed petitioner Papas asking patrons whether they were there for special occasions and escorting seven patrons to the dance floor of the restaurant, where they stood in a line facing the crowd. Papas stood on a chair and, holding a bottle of ouzo, poured directly into each participant's mouth until the participant signaled for him to stop. While Papas was pouring, the crowd cheered and counted; the patron who continued drinking for the longest count won a T-shirt. The investigators did not see any visibly intoxicated patrons or any minors on the premises.

Two months later, OLCC issued a notice of proposed license suspension and civil penalty. After petitioners requested a hearing, OLCC again sent compliance inspectors to the restaurant. The inspectors again observed Papas carry out the described conduct, this time with five patrons. A few days later, when the inspectors met with Papas, he disagreed that the activity constituted a "drinking contest."

The requested hearing was held before an administrative law judge (ALJ) from the Office of Administrative

---

[1] Licensees are notified about rule amendments through OLCC's quarterly publication, Distilled Data. The July 2003 issue notified licensees about newly adopted OAR 845-006-0345(11)(c), albeit with a typographical error, namely, the omission of the disjunctive "or" between "an extraordinary speed" and "increased quantities." That error does not affect the proceeding or result in this case.

Hearings. OLCC's witnesses included its rules coordinator, Hilton, and three inspectors. Petitioner Papas testified on behalf of petitioners.

In November 2004, the ALJ issued a proposed order in which he concluded that petitioners had served alcoholic beverages without a valid service permit in violation of ORS 471.360(1)(b), but that the preponderance of the evidence did not show that petitioners had conducted a drinking contest in violation of OAR 845-006-0345(11)(c). The ALJ imposed a civil penalty of a 12-day license suspension or a fine of $1,980 in lieu of suspension.

The following month, OLCC remanded the order to the ALJ for consideration of a constitutional challenge to OAR 845-006-0345(11)(c) that petitioners had raised previously, which had not been addressed in the prior order. On remand, petitioners contended that the rule is unconstitutionally vague in violation of Article I, sections 20 and 21, of the Oregon Constitution because it does not define or provide notice of what conduct is prohibited. OLCC responded that petitioners' "fair notice" argument is not cognizable under either constitutional provision. In June 2005, the ALJ issued an amended proposed order, again concluding that petitioners had violated ORS 471.360(1)(b), concluding that they had failed to demonstrate that OAR 845-006-0345(11)(c) was constitutionally infirm, and again concluding that petitioners had not violated that rule in any event. The ALJ again imposed a suspension or, alternatively, a fine.

In August 2005, OLCC adopted in part and modified in part the ALJ's amended proposed order and issued its final order in the case. As pertinent here, OLCC concluded that, on the two occasions observed by the inspectors, petitioners had violated OAR 845-006-0345(11)(c). OLCC explained that the relevant conduct constituted a "contest" that had the "object" of "consum[ing] the greatest amount of alcohol of all the contestants," that involved the declaration of a winner who was awarded a prize, and that involved " 'increased quantities' due to the unlimited nature of the consumption" of the alcohol, regardless of whether the alcohol was "dribbled" or

poured in a steady stream. OLCC increased the total suspension of petitioners' license to 60 days or, alternatively, a suspension of four days and a fine of $9,240.

As noted, in their sole assignment of error on judicial review, petitioners assert that OLCC erred in various respects in concluding that they violated OAR 845-006-0345(11)(c). Relying on *Cottrell v. OLCC*, 27 Or App 525, 556 P2d 982 (1976), and *Sun Ray Dairy, Inc. v. OLCC*, 16 Or App 63, 517 P2d 289 (1973), petitioners first contend that the rule is invalid and unenforceable because it fails to define the prohibited conduct and therefore provides no guidance for its application. Petitioners note that, at the hearing, OLCC's own rules coordinator, Hilton, was unable to tell the ALJ what constituted "extraordinary speed" in consuming alcohol or, as relevant to OLCC's conclusion in this case, how persons subject to the rule should understand what "increased quantity" means.

Next, petitioners contend that there is no evidence that the conduct at issue was "designed" to "increase consumption" of alcohol "in increased quantities." Petitioners point to OLCC's own findings in its final order that the conduct here was "designed to duplicate Greek traditions" and that petitioners' purpose was "to provide a fun atmosphere * * *, not to induce more drinking." According to petitioners, those findings are consistent with the evidence in the hearing; by contrast, OLCC's apparent conclusion that the conduct was "designed" to increase consumption is not. Petitioners particularly point to evidence that the ouzo used in the entertainment was provided free and that petitioners therefore have no incentive to increase the quantities consumed, that no customer had ever participated in the entertainment in order to receive a prize, and that no participant ever showed signs of intoxication.

Finally, petitioners contend that OLCC's final order lacks substantial reason—that the commission's conclusion that petitioners violated OAR 845-006-0345(11)(c) is not rationally related to its own factual findings. Specifically, petitioners challenge OLCC's reasoning that the contest involved "increased quantities" because of the "unlimited

nature of the consumption." According to petitioners, "unlimited consumption" is not itself prohibited by the rule; petitioners also point out that, in any event, there is no evidence of any baseline amount against which the quantities consumed constituted an "increase."[2]

OLCC responds that petitioners' challenge to the validity of the rule properly should be considered a challenge to OLCC's interpretation of its own rule, which, OLCC contends, is entitled to deference under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). It first contends that, consistently with *Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985), it properly construed the rule in the context of issuing the final order in this case and that, having done so and in the absence of any statutory directive to engage in additional rulemaking, further definition of the terms used in the rule was not necessary. OLCC also contends that, to the extent that petitioners assert that it has applied the rule inconsistently with other applications, there is no evidence to support that assertion; according to OLCC, the rule is relatively new, the record does not demonstrate that it has been applied in other cases, and nothing in the record suggests that OLCC will apply it differently in future cases.

OLCC argues that, in any event, the meaning of OAR 845-006-0345(11)(c) is readily determined from its text. In particular, OLCC asserts that, as a matter of plain meaning, a "contest" is a competition with a winner, and whether a drinking contest is "designed" to increase alcohol consumption depends on the rules of the contest, not on the subjective intent of the person conducting it or the "ultimate effect" of the contest. OLCC contends, moreover, that its rule need not be so specific that it necessarily notifies a licensee that its particular conduct is unlawful. Rather, relying on *McCann v. OLCC*, 27 Or App 487, 556 P2d 973 (1976), OLCC contends that, when decisional criteria are set out in general terms, the reviewing court looks to the decision itself for a rational

---

[2] Petitioners do not contend on judicial review that OLCC failed to identify and explain its modifications to the form of order issued by the ALJ as provided in ORS 183.650(2).

exposition of the facts and of the reasoning that leads from the facts to the conclusion.

According to OLCC, that rational connection exists here. Specifically, OLCC contends that, where it plausibly and properly has construed OAR 845-006-0345(11)(c) to focus on the rules of a drinking contest and, in addition, to prohibit the free pouring of alcohol into a person's mouth; where substantial evidence in the record demonstrates that the rules of the contest at issue here included providing ouzo for free, telling contestants that they would win by consuming more ouzo than other competitors, and encouraging them to drink ouzo continuously while the other patrons counted; and where substantial evidence in the record also demonstrates that the contests at issue were conducted in accordance with those rules, substantial reason supports OLCC's conclusion that the contests violated OAR 845-006-0345(11)(c) by being "designed to increase consumption * * * in increased quantities," because the rules "encouraged contestants to consume more ouzo at once than they otherwise would." OLCC also contends that it articulated that reasoning in its order "by emphasizing the competitive nature of the activity that petitioners conducted, and by emphasizing the lack of any restrictions—financial or otherwise—on how much ouzo each competitor might consume."

Petitioners reply that they do not contest OLCC's authority to define the terms used in OAR 845-006-0345(11)(c) by decision rather than by rule; rather, they dispute that OLCC sufficiently did so here. According to petitioners, OLCC merely recited the facts and summarily concluded that those facts constituted violations of the rule. Noting that OLCC never identified any benchmark amount of consumption, petitioners particularly object to OLCC's conclusion that the contests at issue here involved "increased consumption" in "increased quantities." Petitioners again point to evidence in the record that not even OLCC's own witnesses were able to explain the meaning of the rule in those respects or its proper application. Petitioners contend that OLCC could have adopted a rule that prohibits all drinking contests or all "free pouring" but did not do so here and that OLCC erred in concluding that they committed the narrower class of prohibited conduct addressed by the rule. Petitioners

also again note that OLCC's order itself finds that the contests were "designed" to duplicate Greek traditions, "not to induce more drinking," and that, as OLCC itself acknowledged, the maximum amount of alcohol ever consumed by a winner was only about one-and-a-half shots. Finally, petitioners dispute that OLCC's emphasis on the competitive nature of the contests conducted by them was a sufficient articulation of the reasoning leading to its conclusion that petitioners violated the rule.[3]

An agency may determine whether the standard established in a rule has been met in a particular instance by interpreting the rule in the course of applying it. *Goin v. Employment Dept.*, 203 Or App 758, 763-64, 126 P3d 734 (2006). We defer to the agency's plausible interpretation of its own rule—including an interpretation made in the course of applying the rule—if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law. *Don't Waste Oregon Com.*, 320 Or at 142; *Goin*, 203 Or App at 763-64. Under our substantial reason review of an order in a contested case, we determine whether the agency's factual findings logically lead to its conclusions of law—here, the conclusion that petitioners violated OAR 845-006-0345(11)(c). *Goin*, 203 Or App at 763-64.

In determining that petitioners violated the rule, OLCC in effect interpreted the rule to mean that conduct involving "competition" and "free pouring" constitutes a "drinking contest[ ] designed to increase consumption" of alcohol "in increased quantities," regardless of the licensees' intent in conducting such a contest or any measurement of the amounts consumed during the contest relative to amounts otherwise consumed. We conclude that OLCC's interpretation of the rule is inconsistent with the wording of the rule and with its context; accordingly, that interpretation is not entitled to this court's deference under *Don't Waste Oregon Com.*, and we remand for application of a plausible interpretation of the rule to the facts of this case.

We begin with whether OLCC's interpretation of the rule, as developed and applied in this case, is consistent with

---

[3] Petitioners do not renew their constitutional challenge to the rule.

the rule's text. Certainly, OLCC's understanding that the rule applies to "competitions" is consistent with the use of the term "contest" in the rule. *See Webster's Third New Int'l Dictionary* 492 (unabridged ed 2002) (defining the noun "contest" as a "competition"). However, by its terms, the rule refers and applies to specific types of drinking contests: as pertinent here, ones that involve "increase[d] consumption * * * in increased quantities" of alcoholic beverages. OLCC's interpretation and application in this case fail to account for that qualification or to yield any pertinent point of reference in that regard; that is, nothing in OLCC's interpretation or application of the rule here identifies the consumption or quantities against which the required "increase" is to be, or was, measured. *See Webster's* at 1145 (defining the transitive verb "increase" as "to make greater in some respect (as in bulk, quantity, extent, value, or amount) : add to : enhance" and defining the adjective "increased" as "made or become greater"). Thus, OLCC's proposed interpretation—that mere competition between participants constitutes conduct violating the rule—is inconsistent with the latter, qualifying aspects of the rule.

Conversely, although OLCC interprets the rule to prohibit "free pouring," the rule says nothing about that or any other particular manner of serving or providing alcohol to a patron. Accordingly, OLCC's interpretation lacks support in the text of the rule in that respect.

Finally, OLCC's interpretation of the word "designed" is problematic. The ordinary meaning of the verb "design" includes "to conceive and plan out in the mind"; "to plan or have in mind as a purpose : to intend, purpose, contemplate"; "to devise or propose for a specific function"; and "to create, plan, or calculate for serving a predetermined end." *Webster's* at 611. As particularly pertinent here, when used in the passive or participial form, the verb "design" means "to plan or produce with special intentional adaptation to a specific end * * *‹statutes are ~ed to meet * * *›." *Id.* Those definitions suggest that a drinking contest is "designed to increase consumption * * * in increased quantities" only if that characteristic is the intended purpose of the person devising the contest, not merely a possible or even probable result of the contest's rules.

We turn to the rule's context. Another provision of the same rule prohibits a licensee from giving any alcoholic beverage "as a prize, premium, or consideration for any * * * contest * * * or any competition *of any kind.*" OAR 845-006-0345(8) (emphasis added). The emphasized phrase demonstrates that, when OLCC wishes to refer to all forms of contests without qualification, it knows how to do so. Accordingly, OAR 845-006-0345(8) confirms that OAR 845-006-0345(11)(c) applies only to the particular types of contests described therein: those "designed to increase consumption * * * in increased quantities." OAR 845-006-0345(8) sheds no light, however, on the contours of that category.

OAR 845-006-0345 was adopted pursuant to OLCC's authority to enforce ORS chapter 471 (also known as the Liquor Control Act, *see* ORS 471.027). Accordingly, that chapter also is context for the rule. However, we have not found any statutory provision that directly addresses the subject of OAR 845-006-0345(11)(c). Several statutes demonstrate that the legislature generally intended that alcoholic beverages be consumed in a temperate manner. *See* ORS 471.030(1)(b) (providing, in part, that the act shall be liberally construed so as to "promote temperance in the use and consumption of alcoholic beverages"); ORS 471.115 (providing that OLCC may limit the quantity of alcoholic liquor purchased at any one time by any person); ORS 471.410(1) (prohibiting licensees from making any alcoholic beverage available to an intoxicated person); ORS 471.412 (prohibiting licensees from knowingly allowing an intoxicated person to consume alcoholic beverages). At least one statute regulates conduct relating to contests; it provides, in part, that, with specified exceptions, "alcoholic liquor may not be given as a prize, premium, or consideration for a lottery, contest, game of chance or skill, or competition of any kind." ORS 471.408. However, none of the described statutes, nor any other that we have identified, refers to or regulates contests in which the consumption of alcohol is itself the form of competition involved. Although the statutes generally embody a policy of encouraging temperance, we have not found any statute effectively requiring OLCC to adopt a rule prohibiting all drinking contests or precluding it from adopting a rule that prohibits some, but not all, drinking contests. Thus, OLCC's

authorizing statutes are of limited assistance in assessing the agency's interpretation of OAR 845-006-0345(11)(c). We have not found any other source of law that is relevant.

In summary, OLCC's interpretation of OAR 845-006-0345(11)(c) is inconsistent with the text of the rule—particularly, the plainly stated limitation as to which drinking contests are subject to the rule and the plain meanings of the words "increase" and "design." It also is inconsistent with contextual evidence that OLCC knows how to refer to all contests or competitions without qualification. Other sources of law are not helpful.

On balance, we cannot say that OLCC's interpretation is plausible. Accordingly, we remand for OLCC to determine, under a proper interpretation of the rule, whether petitioners' conduct violated the rule. ORS 183.482(8)(a)(B); *see also Nichols v. Office of Medical Assistance Programs*, 171 Or App 255, 262, 15 P3d 578 (2000) (where an agency's interpretation of a rule was implausible and therefore erroneous, the court remanded for application of a plausible interpretation of the rule to the facts of the case).

Violation of OAR 845-006-0345(11)(c) reversed and remanded for reconsideration; otherwise affirmed.