Argued and submitted January 6, 2015, reversed and remanded
November 16, 2016

Kenneth E. GENOVA, D.V.M.,
*Petitioner,*

*v.*

OREGON VETERINARY
MEDICAL EXAMINING BOARD,
*Respondent.*

Board of Medical Examiners for the State of Oregon
070024; A148617

386 P3d 40

Michael T. Stone argued the cause and filed the briefs for petitioner.

Carolyn Alexander, Assistant Attorney General, argued the cause for respondent. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Petitioner, a licensed veterinarian, seeks judicial review of a final order issued by the Oregon Veterinary Medical Examining Board (the board) in which it concluded that petitioner engaged in "unprofessional conduct," ORS 686.120[1] and ORS 686.130,[2] and, as a sanction, ordered him to pay a $750 penalty and $5,594.28 for the costs of the proceedings, ORS 686.150. We "review for substantial evidence, substantial reason, and errors of law." *Papas v. OLCC*, 213 Or App 369, 371, 161 P3d 948 (2007). Because we conclude that the board's order lacks substantial reason, we reverse and remand the order.

We summarize the facts, which are undisputed, from the record and as found in the board's final order. In the summer of 2007, petitioner agreed to participate in a mentoring program for veterinary students at Oregon State University.[3] As part of that program, petitioner hired F, a veterinary student, to work as an assistant at his hospital that summer. F performed a variety of tasks under petitioner's supervision, including, in relevant part, administering rabies vaccinations. The record reflects that F performed her duties more than adequately.

In January 2008, the board sent petitioner a notice of proposed discipline after receiving complaints related to F's work at the hospital, though the nature of the complaints is unclear. Following its initial notice, the board sent petitioner two amended notices of proposed disciplinary action. In the operative notice, the board alleged that petitioner was subject to discipline for unprofessional conduct under ORS 686.130(6) by "having [a] professional connection with the illegal practice of veterinary medicine"[4] and under

---

[1] ORS 686.120(1) grants the board the authority to discipline "any permit or license holder * * * for unprofessional or dishonorable conduct."

[2] ORS 686.130 defines "unprofessional conduct," listing 15 types of proscribed acts.

[3] The mentoring program was sponsored by the Oregon Veterinary Medical Association (OVMA), a separate entity from the board. Although the OVMA initially believed that the program had been approved by the board, it had not, in fact, been approved.

[4] ORS 686.130(6) defines unprofessional conduct as "[h]aving [a] professional connection with, or lending one's name to any illegal practitioner of veterinary medicine and the various branches thereof."

OAR 875-011-0010(24) by "violat[ing] * * * other state laws relating to veterinary practice."[5] The board claimed that, by allowing F to administer up to 10 rabies vaccinations, petitioner had violated OAR 333-019-0017(2)(a) - (c), which provides that rabies vaccinations are "valid only when performed" by a licensed veterinarian, a veterinary technician under the direct supervision of a licensed veterinarian, or another person approved by the State Public Health Veterinarian.[6] The board claimed that petitioner was responsible for F's failure to comply with the rabies rule because of OAR 875-015-0005(3), which makes a practitioner responsible for any noncompliant condition in his clinic.

In November 2010, an administrative law judge (ALJ) held a contested case hearing on the matter. After hearing testimony by petitioner and Dr. Emilio DeBess (the State Public Health Veterinarian), the ALJ issued a proposed order in which he concluded that "[petitioner's] allowance of a veterinary student to administer rabies vaccinations did not constitute unprofessional conduct under ORS 686.130." The ALJ opined that the rabies rule addressed only the *validity* of a rabies vaccination and was unrelated to the *practice* of veterinary medicine. That is, the ALJ opined that the only consequence for failure to comply with the requirements of the rabies rule was that the vaccination was invalid. Therefore, the ALJ concluded that F could not be considered an "illegal practitioner" and, thus, petitioner could not be disciplined for having a "professional connection with" an illegal practitioner under ORS 686.130(6) and that, "even if [petitioner] allowed [F] to perform rabies vaccinations that turned out to be invalid, he did not 'violate' the law" for the purposes of OAR 875-011-0010(24).

Following the ALJ's order, the board issued and withdrew a series of orders. A complete recitation of that procedural history and the substance of those orders is not necessary to our analysis. In its final order, the board rejected

---

[5] Under OAR 875-011-0010(24), unprofessional conduct includes "[v]iolations of *other laws* that relate to the practice of veterinary medicine, including violations of the Oregon Racing Commission statutes and administrative rules." (Emphasis added.)

[6] We refer to OAR 333-019-0017(2)(a) - (c) as "the rabies rule" in the remainder of this opinion.

the ALJ's determination and concluded that petitioner "did engage in professional conduct under ORS 686.130 and OAR 875-011-0010(24) when he allowed a veterinary student to administer rabies vaccinations in his clinic in violation of [the rabies rule]." The board stated, in part:

"The factual record is indisputable that [petitioner] allowed [F] to administer rabies vaccines under his direct control within his clinic in 2007, in violation of OAR 333-019-0017. This rule qualifies as an 'other state law relating to veterinary practice.' The Board observes that this rule is well known in the profession, and the underlying need for the rule is grounded in the necessity to protect public health and safety. As a result, [petitioner] violated OAR 875-011-0010(24), which defines unprofessional or dishonorable conduct, ORS 686.130. Clearly, [petitioner] did violate 'other laws' when he allowed [F] to administer the rabies vaccine under his direct control in 2007. Licensees are responsible for noncompliant conditions in their clinics pursuant to OAR 875-015-0005(3)."

The board then addressed the exceptions that petitioner had filed in response to the board's proposed order, ultimately rejecting them. In relevant part, petitioner had challenged the board's legal conclusions by pointing to ORS 686.040(13) (2007),[7] which he claimed had provided statutory authority for F to administer rabies vaccinations. In addressing that exception, the board stated:

"In [petitioner's] other written exception, that was received March 4, 2011, he contends that ORS 686.040(13), as it existed in 2007, serves to exempt [F] from being considered an 'illegal practitioner.' The Board concedes that ORS 686.130(6) is not applicable to this case. Nevertheless, this argument does not address the fact that [petitioner] allowed the student * * * to administer rabies vaccines to animals in his clinic, something that she lacked the legal

[7] ORS 686.020(1)(a) provides that no person shall "[p]ractice veterinary medicine, surgery or dentistry, in this state unless the person holds a valid license issued by the Oregon State Veterinary Medical Examining Board."

However, ORS 686.040(13) (2007) states that "ORS 686.020(1)(a) does not apply to * * * students of veterinary science who participate in the diagnosis and treatment of animals, including those in off-campus educational programs who are under the direct supervision of Oregon licensed veterinarians."

All references in this opinion to ORS 686.040(13) are to the 2007 version of the statute.

authority to do, whether or not she was working under his direct supervision and whether or not she was working under the auspices of an approved educational program."

Having concluded that petitioner engaged in unprofessional conduct by violating OAR 875-011-0010(24), the board assessed a civil penalty of $750 against petitioner, as well as $5,594.28 in costs.

On appeal, petitioner reprises his challenge to the board's order. In his first assignment of error, he contends that the board erred by concluding that petitioner engaged in unprofessional conduct under OAR 875-011-0010(24). Petitioner's two other assignments of error (assignments four and five) challenge the resulting sanctions.[8]

Turning to petitioner's first assignment of error, we begin by summarizing the statutory framework and administrative rules that govern the discipline of licensed veterinary practitioners. As noted, ORS 686.120(1) authorizes the board to discipline any "permit or license holder" for "unprofessional or dishonorable conduct." ORS 686.130, in turn, defines "unprofessional or dishonorable conduct," listing 15 types of proscribed conduct. Although the term "unprofessional or dishonorable conduct" is statutorily defined, the board has promulgated a rule to interpret[9] that term. In particular, the board promulgated OAR 875-011-0010, which provides a nonexhaustive list of acts that the board interprets as "unprofessional or dishonorable conduct." That currently includes, in relevant part, subsection (24), which provides that a practitioner may be disciplined for "[v]iolations of *other laws* that relate to the practice of veterinary medicine, including violations of the Oregon Racing Commission statutes and administrative rules." OAR 875-011-0010(24) (emphasis added). The "other law" at issue in this case is the rabies rule, which is a rule promulgated by the Public Health Division, an agency distinct from the board.

---

[8] Petitioner's appeal initially contained five assignments of error; however, due to the procedural history of this case, only assignments one, four, and five remain.

[9] For the purposes of this opinion, we use the term "interpret" because the board's rule states: "The Board *interprets* 'unprofessional or dishonorable conduct' to include, but is not limited to, the following[.]" OAR 875-011-0010. (Emphasis added.)

On appeal, petitioner raises three arguments as to why the board's conclusion that he violated OAR 875-011-0010(24) is incorrect. First, he claims that F was authorized by statute to administer the rabies vaccines under the relevant licensing statutes; therefore, if her conduct was authorized, the board could not have found that petitioner engaged in unprofessional conduct. Second, petitioner argues that, even if F was not authorized to administer the vaccinations, her administration of the vaccines did not constitute a "violation of law," as proscribed by OAR 875-011-0010(24); rather, the only consequence would be that the vaccines would be invalid under the rabies rule. Third, petitioner contends that the board's decision is not supported by substantial evidence.

The board, in turn, maintains that it correctly determined that petitioner engaged in unprofessional conduct under OAR 875-011-0010(24). Specifically, the board contends that the rabies rule qualifies as an "other law" related to the practice of veterinary medicine, which petitioner violated by allowing F, who was unlicensed and uncertified, to administer rabies vaccinations. Further, the board argues that it correctly rejected petitioner's arguments regarding the effect of ORS 686.040(13). Ultimately, the board claims that, because its interpretation is plausible and consistent with the wording of the rule and its context, we must give deference to its interpretation under *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

Once more, we review the board's order for substantial evidence, substantial reason, and legal error. As the Supreme Court has explained, in addition to the substantial evidence requirement for findings, "agencies are also required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts." *Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996) (emphases in original). That is, "[u]nder our substantial reason review of an order in a contested case, we determine whether the agency's factual findings logically lead to its conclusions of law." *Papas*, 213 Or App at 377; *see also Ross v. Springfield School Dist. No. 19*, 294 Or 357, 370, 657 P2d 188 (1982) ("It

is essential that an agency articulate in a contested case the rational connection between the facts and the legal conclusion it draws from them."). In this case, we conclude that the board's order lacks substantial reason because the board failed to adequately explain the reasoning in support of its legal conclusion, particularly in light of petitioner's exceptions. *See Drew*, 322 Or at 499-500 (review for substantial reason is based on the order itself, not our independent review of the record).

Petitioner's fundamental contention is, and consistently has been, that he did not engage in unprofessional conduct because F was statutorily authorized, under ORS 686.040(13), to administer rabies vaccinations at the time that she was working under his supervision. However, in its order, the board failed to adequately address why it rejected petitioner's argument. *See Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 200, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005) ("[A]gency must consider any timely exceptions and argument before issuing a final order."); *Freeman v. Employment Dept.*, 195 Or App 417, 425, 98 P3d 402 (2004) (department's order lacked substantial reason where the department failed to adequately address why claimant's argument was wrong).

For the first time on appeal, the board claims that petitioner's interpretation is wrong because it creates a "needless conflict" between ORS 686.040(13), which governs the practice of veterinary medicine by unlicensed persons, and the rabies rule. The board states that, "[g]iven the overarching purpose of the statutory scheme governing the practice of veterinary medicine, it can safely be said that the legislature did not intend to create a public health concern by allowing students to perform a task that the Public Health Division has expressly prohibited." However, far from being "needless," it appears that petitioner is caught exactly in the middle of that apparent conflict, between the statutory scheme regulating veterinary practice and the Public Health Division's rule. The board's order fails to adequately address that conflict by gliding over the question of whether F's conduct was permissible under the statutes regulating veterinary practice and, if so, why that did not matter in the interpretation and application of OAR 875-011-0010(24).

Once again, in addressing petitioner's exception, the board merely stated:

> "In [petitioner's] other written exception, that was received March 4, 2011, he contends that ORS 686.040(13), *as it existed in 2007, serves to exempt [F] from being considered an 'illegal practitioner.' The Board concedes that ORS 686.130(6) is not applicable to this case.* Nevertheless, this argument does not address the fact that [petitioner] allowed the student * * * to administer rabies vaccines to animals in his clinic, *something that she lacked the legal authority to do,* whether or not she was working under his direct supervision and whether or not she was working under the auspices of an approved educational program."

(Emphases added.)[10]

As we understand the order, the board reached two conclusions: (1) F's administration of rabies vaccinations did not constitute the illegal practice of veterinary medicine ("ORS 686.040(13) * * * serves to exempt [F] from being considered an 'illegal practitioner.' The board concedes that ORS 686.130(6) is not applicable to this case"); and (2) F did not have the legal authority to administer the vaccinations because that practice was proscribed by the rabies rule. Those two conclusions are contradictory because they suggest that F's conduct was both illegal and legal. The board's order neither explained nor resolved that contradiction, particularly in the context of OAR 875-011-0010(24) and ORS 686.130, which specifically address unprofessional conduct.

In its order, the board summarily concluded that petitioner engaged in unprofessional conduct under OAR 875-011-0010(24) because he—through F's conduct—failed to fully comply with the rabies rule. However, if, as petitioner argues, the broad language of ORS 686.040(13) indeed authorized F to administer rabies vaccines, then it is unclear why allowing that permitted practice was grounds

---

[10] We note that the ALJ and the board relied on the 2009 version of ORS 686.040(13), which was amended to be more restrictive than the 2007 version of the statute. However, the board also considered the 2007 version in addressing petitioner's exceptions. Because the board referenced both versions of the statute, it is unclear whether it agreed with petitioner that the 2007 version should apply; though it appears that it believed it should. During oral argument, the board indicated that there was no dispute that the "old" 2007 version should apply.

for discipline. It may be true, as the board suggests, that F's failure to comply with the rabies rule was sufficient to support the disciplinary charges against petitioner, regardless of whether that conduct was otherwise permitted, but the board has not explained why that is so. Accordingly, we must reverse and remand the board's order for further explanation of its conclusion. *Cf. Cochran v. Board of Psychologist Examiners*, 171 Or App 311, 320, 15 P3d 73 (2000) (remanding the board's order, in part, because the board failed to explain why petitioner should be disciplined for presenting unqualified expert testimony in a judicial proceeding where the court nevertheless permitted the introduction of that testimony, presumably after meeting the minimum standards of reliability). Accordingly, we reverse and remand the order to the board for reconsideration.[11]

Reversed and remanded.

---

[11] Given our disposition, we do not reach petitioner's assignments of error regarding sanctions.