No. 930                    December 26, 2024                    79

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

NEWSUN ENERGY LLC,
*Petitioner,*

*v.*

PUBLIC UTILITY COMMISSION OF OREGON,
Alliance of Western Energy Consumers,
Idaho Power Company,
Northwest & Intermountain Power Producers Coalition,
Obsidian Renewables,
Oregon Solar + Storage Industry Association, PacifiCorp,
Portland General Electric,
Staff of The Public Utility Commission of Oregon.
*Respondents,*

*and*

COMMUNITY RENEWABLE ENERGY ASSOCIATION
and Renewable Energy Coalition,
*Intervenors below.*

Public Utility Commission of Oregon
UM2032; A180896

Argued and submitted November 8, 2024.

Tyler R. Whitney argued the cause for petitioner. Also on the briefs were Richard G. Lorenz, Casey M. Nokes, and Cable Huston LLP.

Jordan R. Silk, Assistant Attorney General, argued the case for respondents Public Utility Commission of Oregon and Staff of the Public Utility Commission of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jordan Schoonover argued the cause for respondents Idaho Power Company, PacifiCorp, and Portland General

Electric Company. Also on the brief were Adam Lowney and McDowell Rackner Gibson PC.

Gregory M. Adams and Richardson Adams, PLLC, Idaho, and Irion A. Sanger, Ellie Hardwick, and Sanger Law, PC filed the brief *amicus curiae* for Community Renewable Energy Association and Renewable Energy Coalition.

No appearance for Obsidian Renewables.

No appearance for Alliance of Western Energy Consumers, Northwest and Intermountain Power Producers Renewable Energy Coalition, and Oregon Solar + Storage Industries Association.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Petitioner seeks judicial review of final Public Utility Commission Order No. 23-005 and subsequent clarifying Order No. 23-164. Petitioner raises two assignments of error: (1) the Public Utility Commission of Oregon (commission)erred by discriminating against qualifying facilities (QFs) "regarding the allocation of network upgrade costs in violation of the Public Utility Regulatory Policies Act's (PURPA) express requirements and those of Oregon's statutory regulations";[1] and (2) the commission erred by making conclusions in its final orders that were not supported by substantial reason. We affirm.

*Discriminatory Treatment.* In its first assignment of error, petitioner contends that the commission's order is discriminatory, in violation of both PURPA and Oregon's "mini-PURPA" statute. We review the commission's orders to determine "whether the PUC correctly applied the applicable law and whether it acted within the scope of its discretion." *Northwest Public Communications Council v. Qwest*, 279 Or App 626, 643, 379 P3d 633 (2016).

As we understand it, petitioner's theory as to why the commission's order is discriminatory is that it places "on-system" QFs, like petitioner, at a "unique economic disadvantage" *vis-à-vis* "off-system" QFs by continuing to make "on-system" QFs presumptively responsible for the cost of network upgrades associated with interconnection.[2] Petitioner appears to contend that by continuing to keep the presumptive cost burden of network upgrades on QFs, the commission

---

[1] Per the Federal Energy Regulatory Commission's (FERC) pro forma large generator interconnection procedures and agreements, Network Upgrades are defined as "the additions, modifications, and upgrades to the Transmission Provider's Transmission System required at or beyond the point at which the Interconnection Facilities connect to the Transmission Provider's Transmission System to accommodate the interconnection of the Large Generating Facility to the Transmission Provider's Transmission System."

[2] "On system" QFs refer to facilities that sell their total output to a state electric utility and are thus subject to state authority "over the interconnection and the allocation of interconnection costs." Conversely, "off system" QFs are facilities that elect to sell some or all of their power output to utilities other than the one with which they are directly interconnected and are thus subject to FERC authority. Standardization of Generator Interconnection Agreement and Procedures, Order No. 2003, 68 Fed Reg 49,846, at 49,918 (Aug 19, 2003), 104 FERC ¶ 61,103, at 165 (2003).

is establishing a discriminatory scheme because, were those QFs under FERC jurisdiction, they would be subject to a different—and more beneficial—crediting policy.

That argument—which hinges on the commission's decision to adopt a policy for QFs subject to its regulation that differs from the policy choice made by FERC with respect to QFs subject to its regulation—is unpersuasive for two reasons. First, federal regulations explicitly give state regulatory authorities the power to "determine the manner for payments of interconnection costs" as well as assess the interconnection costs due from QFs. 18 CFR § 292.306(a), (b). Thus, federal law explicitly grants state regulatory authorities the power to make policy choices regarding interconnection costs that diverge from the choices made by FERC. Additionally, petitioner cites to no basis in law for the assertion that it is legally cognizable discrimination for one regulatory authority to make policy choices that differ from those made by a different regulatory authority.

Petitioner also points to *CED Wheatland, LLC v. Montana Department of Public Service Regulation*, 408 Mont 268, 284, 509 P3d 19 (2022), in support of its argument that the commission's policy is discriminatory. But that case did not address the issue here, which is what framework should apply for determining who should bear the cost of network upgrades required to accommodate the interconnection of a QF. Rather, it involved a fact-specific determination that it would be impermissibly discriminatory to require the QF in that case to bear the costs—upwards of $237 million—for a network upgrade that benefited the utility's system as a whole. *Wheatland*, 408 Mont at 277. This case involves a challenge to the commission's policy for determining when the costs of a network upgrade may be shifted away from the QF—a policy that expressly allows a QF to demonstrate that, on the facts of a particular case, it should not be responsible for network upgrade costs required to permit interconnection.

In addition, petitioner asserts that the commission's decision exceeds its authority because, in petitioner's view, it is inconsistent with ORS 758.515 and with PURPA more generally. ORS 758.515 does not assist petitioner, because it recites legislative findings and does not impose substantive

limitations on the commission's authority. *See Urban Renewal Comm. of Oregon City v. Williams*, 322 Or App 615, 633, 521 P3d 494 (2022), *rev den*, 371 Or 127 (2023) (stating that legislative findings may provide context but are "not conclusive * * * because they are not operative directives" in statutes). While the energy goals outlined in ORS 758.515 may provide context for the commission's implementation of Oregon's "mini-PURPA" statute, "[i]t is the operative text of the legislation, not prefatory findings, that people must obey and that administrators and judges enforce." *City of Portland v. Tidyman*, 306 Or 174, 185, 759 P2d 242 (1988).

As to PURPA, petitioner contends that the commission's orders are inconsistent with PURPA because, in petitioner's view, they incentivize QFs to engage in off-system energy sales that would be subject to FERC's regulation. This, petitioner asserts, is contrary to PURPA's purpose of fostering "development of cogeneration facilities" and encouraging a market for the energy that the facilities produce. *OTECC v. Co-Gen*, 168 Or App 466, 469-70, 7 P3d 594 (2000), *rev den*, 332 Or 137 (2001).

Petitioner's arguments do not persuade us that there is an inconsistency between PURPA and the commission's decision to create a rebuttable presumption to allocate network upgrade costs associated with interconnection to an interconnecting QF. FERC's regulations "afford state regulatory authorities and nonregulated utilities latitude in determining the manner in which the regulations are to be implemented." *FERC v. Mississippi*, 456 US 742, 751, 102 S Ct 2126, 72 L Ed 2d 532 (1982). A state commission can thus comply with FERC's regulations in a number of ways, including by issuing regulations, by resolving disputes on a case-by-case basis, "or by taking any other action reasonably designed to give effect to FERC's rules." *Id.* Given that latitude, on the facts of this case, petitioner's argument essentially requires us to substitute our policy judgment for that of the commission, which is something we are not empowered to do. Simply put, petitioner has not demonstrated that PURPA mandates an approach to the allocation of network upgrade costs that is different from the approach taken by the commission.

*Substantial Reason.* In its second assignment of error, petitioner contends that the commission's final orders upholding its current cost allocation policy lack substantial reason.

The substantial reason standard demands a determination of whether findings of fact logically lead to conclusions of law. *Goin v. Employment Dept.*, 203 Or App 758, 126 P3d 734 (2006); *see also Drew v. PSRB*, 322 Or 491, 499-500, 909 P2d 1211 (1996) (addressing the line of decisions since 1975 holding that agencies "are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts" (emphases in original)).

Here, that standard is met. The commission explained its reasons for adhering to its policy approach and opened a process for exploring whether the approach could be approved. While it recognized that no QF has invoked the policy in an effort to shift responsibility for network upgrade costs, the commission identified the specific, complex factfinding hurdles that would accompany the specific change in policy that petitioner advocates. In other words, the choice presented to the commission by petitioner's argument was a selection between two presumptions—the commission's current policy and that underlying FERC's policy, "that all system upgrade costs are ultimately the responsibility of the network provider," neither of which would "produce the perfect balance for any individual Network Upgrade." Under those circumstances, the commission's decision not to change course is supported by substantial reason.

For those reasons, we conclude that the commission's orders are supported by substantial reason.

Affirmed.