Argued and submitted July 7, reversed and remanded September 29, 2004

Matthew B. FREEMAN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Mt. Hood Beverage Company,
*Respondents.*

02-AB-2244; A120045

98 P3d 402

418

Jeffrey A. Johnson argued the cause for petitioner. With him on the briefs was Cosgrave Vergeer Kester LLP.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent Mt. Hood Beverage Company.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Claimant seeks review of an order of the Employment Appeals Board (EAB) denying him unemployment compensation benefits. Claimant's driving privileges were suspended after he was arrested for driving under the influence of intoxicants (DUII). Employer then terminated his employment because he had failed to maintain the license, which was a requirement of his job. The Employment Department (the department) denied claimant unemployment benefits on the ground that he was discharged for misconduct connected with work. That decision was overturned by an administrative law judge (ALJ) but, on appeal, EAB concluded that claimant was not entitled to benefits. On review, claimant argues that EAB erred in finding that his failure to maintain a driver's license was wantonly negligent and concluding that his conduct was neither an isolated instance of poor judgment nor a good faith error. We reverse and remand.

We take the pertinent facts from EAB's order and the record. From October 2001 until August 2002, claimant worked for employer as a sales representative, selling beer and wine to retail stores. Employer required its employees to maintain a valid driver's license, and claimant was aware of that requirement. Claimant drove his own vehicle when performing his job duties. In February 2002, employer issued a memorandum to its employees who drove a company car or drove their own cars for company purposes. The memorandum stated that, because an unusually large number of employees had "made irresponsible decisions and been cited for driving under the influence of alcohol," employer had changed its policy with respect to employee DUIIs. Employer often previously had allowed employees to return to work under a last-chance agreement after a period of license suspension. However, employer announced in the memorandum the adoption of a zero-tolerance policy regarding any arrest, citation, diversion, or conviction involving alcohol-related driving. The policy provided that an employee could be terminated regardless whether the qualifying event occurred during work hours. The memorandum encouraged any employee "who has had too much to drink or is under the

influence of alcohol to find a designated driver, call a friend or to CALL A CAB!" Claimant received the memorandum and understood that, under the new policy, if he drove while intoxicated he ran the risk of losing his driving privileges and his job. Claimant had never previously been arrested for DUII.

About once per month, claimant attended an employer-sponsored wine-tasting event. Claimant typically consumed about three glasses of wine at a wine tasting. On July 19, 2002, claimant attended a wine tasting that employer sponsored at a vineyard. Claimant arrived at about 3:00 p.m., and by 6:00 p.m. he had consumed the equivalent of four glasses of wine. Claimant stopped drinking at about 6:00 p.m. He was concerned that he had consumed too much wine to drive, so he waited until 7:00 p.m. before leaving. Claimant could have asked a coworker to drive him home, but he failed to do so because he believed that he was not under the influence of alcohol.

During claimant's drive home, a police officer stopped him because his car was swerving. The officer administered a field sobriety test and arrested claimant for DUII. Claimant's blood alcohol content was .09. Claimant entered a diversion program and, as a result, his driving privileges were suspended for 90 days. When claimant informed employer that his driving privileges were being suspended, employer discharged him.

Claimant applied for unemployment compensation, and the department denied him benefits, reasoning that "[c]laimant's failure to maintain [his] license, certificate or other similar authority necessary to the performance of the job, when it was within the claimant's reasonable control to do so, is misconduct." Claimant appealed, and the ALJ determined that he was entitled to benefits because the DUII episode constituted an isolated instance of poor judgment. The department appealed that decision to EAB, which concluded that employer discharged claimant for misconduct because (1) claimant was wantonly negligent in failing to maintain his driver's license and the failure was reasonably attributable to claimant, (2) claimant's "failure to maintain his license

was too severe to be an isolated instance of poor judgment," and (3) claimant did not make a good faith error.

On review, claimant argues that EAB erred in finding that his failure to maintain driving privileges was wantonly negligent and in concluding that the loss of his driving privileges was not an isolated instance of poor judgment or a good faith error. *See MacKillop v. Employment Dept.*, 172 Or App 207, 212, 18 P3d 461 (2001) (treating determination that claimant was wantonly negligent as a finding of fact); *Perez v. Employment Dept.*, 164 Or App 356, 365, 992 P2d 460 (1999) (treating determination that claimant's conduct was not an isolated instance of poor judgment as a conclusion of law). We review the challenged finding for substantial evidence in the record and the legal conclusion for substantial reason and errors of law. ORS 183.482(8)(a) - (c).

A department rule, OAR 471-030-0038, provides, in part:

"(3)(a)   As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b)   Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct.

"(c)   The willful or wantonly negligent failure to maintain a license, certification or other similar authority necessary to the performance of the occupation involved is misconduct, so long as such failure is reasonably attributable to the individual."

OAR 471-030-0038(1)(b), in turn, provides:

"As used in this rule, 'wantonly negligent' means indifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of

behavior which an employer has the right to expect of an employee."[1]

■ Claimant first argues that his failure to maintain his driver's license was not "wantonly negligent" and, therefore, that he did not engage in misconduct under OAR 471-030-0038(3)(c). According to claimant, he "consumed alcohol responsibly and did not act with indifference and did not know, or should have known, that he would be only .01 above the [blood alcohol content] legal limit of .08." Claimant asserts that EAB made an error of law because it mistakenly focused on what occurred after claimant drank and drove rather than what "he did and thought" before he drove. We disagree with claimant's characterization of EAB's reasoning. There is no indication in EAB's order that it failed to consider claimant's explanation for his conduct. It may well be, as claimant asserts, that he believed that he was drinking and behaving responsibly. However, that is not the issue at hand. The question, rather, is whether substantial evidence supports EAB's finding that claimant was wantonly negligent in failing to maintain his driving privileges. If so, EAB did not err in concluding that claimant engaged in misconduct under OAR 471-030-0038(3)(c).[2]

In that regard, *Barnes v. Employment Dept.*, 171 Or App 342, 347, 15 P3d 599 (2000), is instructive. In *Barnes*, the claimant argued that his failure to maintain driving privileges was not wantonly negligent because his employer never specifically told him that failure to maintain such privileges could result in his termination. We disagreed:

---

[1] ORS 657.176 provides, in part:

"(2) An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter, or for an employing unit in this or any other state or Canada or as an employee of the federal government, for which remuneration is received that equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the director finds that the individual:

"(a) Has been discharged for misconduct connected with work;

"(b) Has been suspended from work for misconduct connected with work[.]"

[2] Claimant does not challenge EAB's other findings as pertinent to OAR 471-030-0038(3)(c).

"In this case, claimant created a situation that made it impossible for him to comply with his employer's requirement that he maintain a valid driver's license; he drove under the influence of intoxicants—an activity that he knew from past experience could result in the loss of his license."

*Id.* at 348. Here, unlike in *Barnes*, claimant previously had not been disciplined for alcohol-related conduct. However, as in *Barnes*, claimant created a situation that made it impossible for him to comply with his employer's requirement that he maintain driving privileges. Claimant knew of that requirement. Claimant also knew that his conduct in driving under the influence of intoxicants could result in the loss of his driving privileges. Furthermore, claimant understood employer's zero-tolerance policy. Despite that knowledge, he chose to drive after consuming a substantial quantity of alcohol, even though another employee was available to drive him home. He was stopped for swerving, and he failed the field sobriety tests that were administered to him.

Taken together, the foregoing facts support reasonable inferences that claimant was indifferent to the consequences of his decision to drink and drive, that he was conscious of his conduct, and that he should have known that his "conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee." Therefore, EAB did not err in finding that claimant was wantonly negligent within the meaning of OAR 471-030-0038(3)(c). It follows that EAB also did not err in concluding that claimant engaged in misconduct under that section.

■ Claimant next argues that, even if he engaged in misconduct under OAR 471-030-0038, "it was not disqualifying misconduct because it was an isolated instance of poor judgment and/or good faith error" under OAR 471-030-0038(3)(b). EAB summarily rejected those arguments:

"Claimant's failure to maintain his license was too severe to be an isolated instance of poor judgment. By losing his driving privileges, claimant could not perform an essential function of his job with the employer.

"Nor did claimant commit a good faith error when he failed to maintain his license. Considering that the employer considered holding a valid driver's license to be necessary for the performance of a sales representative's duties, and in light of the employer's memorandum of February 11, 2002, claimant could not have held a good faith belief that the employer would condone the conduct that led to the loss of claimant's driving privileges."

In reaching the first conclusion, EAB failed to explain adequately why the "severity" of conduct or of its consequence—in this case, the loss of claimant's driver's license—could determine whether the conduct itself constituted an isolated instance of poor judgment within the meaning of OAR 471-030-0038(3)(b). Instead, EAB appeared to assume that, merely because claimant lost his driving privileges, claimant's conduct could not constitute an instance of poor judgment under OAR 471-030-0038(3)(b). That, however, is not a correct understanding of the rules. We do not suggest that the severity of conduct or its consequences is immaterial to the issue whether a claimant made a decision involving poor judgment. However, the determination whether an instance of poor judgment has occurred logically involves an examination of the claimant's decision-making process that led to the conduct or consequences, as well as the nature or gravity of the conduct or consequence itself. *Cf. Webster's Third New Int'l Dictionary* 1223 (unabridged ed 1993) (defining "judgment," in part, as "the mental or intellectual process of forming an opinion or evaluation by discerning and comparing"). It follows that EAB's conclusion that claimant's conduct was not an instance of poor judgment lacks substantial reason. *See Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (in reviewing for substantial reason, we examine the reasoning that leads the agency from the facts that it has found to the conclusions that it draws from those facts).

A somewhat different problem inheres in EAB's reasoning in support of its conclusion that claimant did not make a good-faith error. Claimant asserts that he believed in good faith that he was not intoxicated when he drove. EAB rejected that argument on the ground that the necessity of a

driver's license to perform claimant's job precluded his having a good-faith belief that employer would condone "the conduct that led to the loss of claimant's driving privileges." That analysis is problematic because it does not explain why claimant's argument is wrong. The issue, as claimant frames it, is not whether it would have constituted a good-faith error for him mistakenly to believe that he could keep his job if he engaged in conduct that would cause him to lose his driver's license. Instead, the issue is whether it constituted a good-faith error for him to believe that he was not under the influence of intoxicants when he drove home. Because EAB failed to adequately address that issue, its conclusion is not supported by substantial reason.

■      Accordingly, we must remand to EAB for reconsideration of both of its conclusions concerning OAR 471-030-0038(3)(b). In doing so, we note that claimant's arguments raise an issue of rule construction on which neither the department, EAB, nor the parties have expressly focused: Whether a claimant who has engaged in conduct ordinarily constituting misconduct under OAR 471-030-0038(3)(c) nonetheless has not engaged in misconduct if the conduct constituted an isolated instance of poor judgment or a good faith error under OAR 471-030-0038(3)(b).[3] Generally speaking, the initial task of interpreting the department's rules is not ours or EAB's, but the department's. *Johnson v. Employment Dept.*, 189 Or App 243, 249, 74 P3d 1159, *adhered to as modified on recons*, 191 Or App 222, 81 P3d 730 (2003); *see also Double K Kleaning Service v. Employment Dept.*, 191 Or App 374, 379, 82 P3d 642 (2004) (affirming department's interpretation and application of the term "isolated instances of poor judgment" in OAR 471-030-0038(3)(b) on ground that interpretation was consistent with text and context of the rule, as well as relevant case law); *Levu v. Employment Dept.*, 149 Or

---

[3] As noted above, the department's representative concluded that "[c]laimant's failure to maintain [his] license, certificate or other similar authority necessary to the performance of the job, when it was within the claimant's reasonable control to do so, is misconduct." The department argues that the representative "implicitly presume[d] that a single failure to maintain a license is not an isolated instance of poor judgment." We disagree. The record does not reflect that the representative considered that issue. Instead, the transcript of the hearing before the ALJ reveals that claimant raised the issue for the first time at that hearing.

App 29, 34, 941 P2d 1056 (1997) (department plausibly construed and applied "poor judgment" standard under OAR 471-030-0038(3)(b) as excluding crime of dishonesty for off-the-job conduct). Here, the department has not had the opportunity to decide that issue. EAB therefore may choose to ascertain the department's interpretation of the rule as pertinent to the issue using any lawful means to do so. *Johnson,* 191 Or App at 224.

Reversed and remanded.