Argued and submitted December 4, 2008, reversed and remanded for
reconsideration May 13, 2009

Benjamin W. SMITHEE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Nordstrom, Inc.,
*Respondents.*

Employment Appeals Board
06AB1970; A134559

208 P3d 965

Michael A. Cox argued the cause and filed the brief for petitioner.

Richard Wasserman, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

No appearance for respondent Nordstrom, Inc.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Claimant seeks judicial review of an Employment Appeals Board (board) determination that he did not qualify for unemployment insurance benefits because he was discharged from his employment for misconduct. ORS 657.176(2)(a) disqualifies a person who "[h]as been discharged for misconduct connected with work" from receiving unemployment compensation benefits. Claimant contends that the board erroneously applied OAR 471-030-0038, a rule of the Oregon Employment Department (department) that defines "misconduct" by excluding conduct that is an "isolated instance of poor judgment." ORS 657.282; ORS 183.482(8)(a), (c). We agree with claimant and remand for reconsideration.

The following facts are not challenged on review. Claimant worked for Nordstrom, Inc., as a customer service associate for five years. During the early years of his employment, employer reviewed job expectations with claimant that included information about allowed rest and meal breaks. Claimant signed an acknowledgment that he had received a written summary of employer's expectations of its employees, although he did not read the summary. Nonetheless, claimant understood that employer expected him to take rest and meal breaks that did not exceed the amount of authorized time. Employer required employees to clock in and out at the beginning and the end of their shifts and meal breaks, but not for 10-minute rest breaks. Claimant often worked through his rest breaks, and his manager gave him permission to combine his two allowed 10-minute breaks into one 20-minute break.

In April 2004, after forgetting to clock out one night after a shift, claimant was advised by the human resources manager that he needed to correct his timesheet due to his mistake. That mistake was attributed to "human error," and claimant was not subject to discipline.[1] Two years later, on August 11, 2006, claimant decided to combine his rest breaks

---

[1] The board found the earlier incident occurred on April 28, 2006, a few months before the time of the alleged misconduct at issue in this case. The administrative law judge found, and the evidence is unequivocal, that the failure to clock out actually happened in 2004.

and drive to a nearby pharmacy to pick up a prescription. Claimant encountered heavy traffic, a result of a concert at the Rose Garden that evening, that delayed his travel to the pharmacy. Claimant picked up his prescription, returned to work, and apologized to his coworker for the delay. Claimant had been absent for 36 minutes, 16 minutes more than allowed by employer's policies. Claimant did not report the extended break to employer because he believed he had already made up for the extra time by not taking rest breaks on other occasions during the course of his employment. Claimant also believed that he had not caused a problem for employer because there was no business activity during his absence. Thus, claimant decided to "just let it slide."

Employer received a tip that claimant had taken an extended break that he had not reported. When questioned, claimant admitted that he had taken an extended break and had not arranged to have his recorded work time adjusted. According to the board, claimant was discharged on August 25, 2006, for "violating [employer's] timekeeping expectations by taking an extended break that he did not report, as the result of which he received pay for time that he had not worked."

Claimant applied for unemployment insurance benefits, and his application was denied by the department's representative. The department determined that claimant had engaged in "misconduct" under ORS 657.176(2)(a):

"You were discharged for misconduct connected with your work. Failing to properly record your time records, after being warned, was a wantonly negligent violation of the standards of behavior an employer has the right to expect of an employee."[2]

---

[2] The department also determined that, "[w]ithout an admission of the commission of theft or a conviction in a court of competent jurisdiction, benefit rights based on wages earned prior to the date of discharge may not be canceled." ORS 657.176(3) precludes the denial of unemployment compensation benefits to a person who "was discharged for misconduct because of the individual's commission of a felony or theft in connection with the individual's work" only if the theft is proven by admission or conviction. The department did not determine whether its findings under ORS 657.176(3) affect the application of OAR 471-030-0038(3) in this case.

Claimant appealed, and a hearing was held before an administrative law judge (ALJ). After listening to testimony from a representative of employer and from claimant, the ALJ ruled against claimant, explaining:

> "Theft of time was tantamount to unlawful conduct, and it was an act that created an irreparable breach of trust in the employment relationship. It was more severe than an isolated instance of poor judgment. Since the employer discharged claimant, for misconduct, claimant is disqualified from receiving unemployment benefits."

Claimant appealed to the board. The board affirmed the ALJ's decision, concluding that claimant willfully violated employer's timekeeping standards and, as a result, he was paid for time when he was absent from the workplace, an act tantamount to theft. The board reasoned that claimant violated employer's "timekeeping expectations" and the violation was intentional "[a]s a matter of common sense and based on the employer's discussion with [claimant] in April 2006." The board found that the misconduct was not an isolated instance of poor judgment:

> "Acts that violate the law or that are tantamount to unlawful conduct exceed mere poor judgment. Claimant used 16 minutes of scheduled work time to run a personal errand. He made a conscious decision not to report his extended break. As a result, the employer paid him for the time that he had been absent from the workplace beyond the end of his scheduled break. Claimant's conduct was tantamount to theft. Therefore, his August 11, 2006 conduct, even though it was a single occurrence, exceeded an isolated instance of poor judgment."

(Footnote omitted.)

The board considered that outcome to be ordained by the department's decision in a similar case, *Tracee L. Stuart*, Director's Decision (Or Emp Dept, Deborah Lincoln, Sept 15, 2003) (*Stuart*). In that decision, the department determined that a claimant's 15-minute absence from the workplace for personal business during work time, although an "isolated occurrence," was "tantamount to theft." The department reasoned in *Stuart* that, by "using the employer's

time to engage in her own personal interests, claimant effectively stole time and productivity from the employer" and that the conduct was not an "isolated instance of poor judgment." In the case under review, the board found that there was not "any basis upon which to distinguish claimant's factual situation from the situation in *Stuart*" and that it was obliged to "defer to the [department's] interpretation of its own rule."

On review, claimant makes three assignments of error. Claimant first contends that the board erred in concluding that he was discharged for misconduct connected with his work. "[I]n reviewing the board's decision that a claimant was or was not discharged for misconduct, we review the board's factual findings for substantial evidence, and its legal conclusion as a matter of law, with appropriate deference to the authorized representative." *Ring v. Employment Dept.*, 205 Or App 532, 537, 134 P3d 1096 (2006) (citations omitted). In this case, we review, under ORS 183.482(8)(b)(B), to see if the board's decision is "inconsistent with an agency rule," *i.e.*, with the requirements of OAR 471-030-0038, bearing in mind that we may not substitute our judgment for that of the department "as to any issue of * * * agency discretion." ORS 183.482(7).

Claimant's second assignment of error contends that the ALJ erred in excluding evidence that employer's reason for termination was pretextual and in excluding evidence of employer's past practice regarding extended breaks and claimant's knowledge of that practice. Claimant's third, and final, assignment of error is that a factual finding of the ALJ was based on unreliable hearsay evidence and not "substantial evidence."

We conclude that the board's reasoning was incomplete and inconsistent with OAR 471-030-0038 and that the correctness of the proceeding was impaired by the exclusion of relevant evidence from the hearing record. Therefore, a remand is necessary to determine whether the evidence and department policies show that claimant engaged in "misconduct connected with work" that was not an "isolated instance of poor judgment."

Claimant's contentions arise in the following legal context. Under ORS 657.176(2)(a), a person who "[h]as been discharged for misconduct connected with work" is not entitled to unemployment insurance benefits. The statutory phrase "misconduct connected with work" is a delegative term under *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980) (delegative terms are those that "express non-completed legislation in which the agency is given delegated authority to complete"). ORS 657.610(4)(b) confers authority on the department's director to adopt rules to implement the statutes on unemployment insurance, including defining the meaning of "misconduct" under ORS 657.176(2)(a). OAR 471-030-0038 contains that definition. We look to the rule, then, to determine the meaning of "misconduct connected with work."

"Misconduct" is defined by OAR 471-030-0038(3)(a) as "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" as well as "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." An act that is misconduct, however, can be excused if it is an "[i]solated instance[ ] of poor judgment." OAR 471-030-0038(3)(b) provides that "[i]solated instances of poor judgment [and] good faith errors * * * are not misconduct." OAR 471-030-0038(1)(d) defines an "isolated instance of poor judgment" as follows:

"(A)   The act must be isolated. The exercise of poor judgment must be a single or infrequent occurrence rather than a repeated act or pattern of other willful or wantonly negligent behavior.

"* * * * *

"(C)   The act must involve poor judgment. A decision to willfully violate an employer's reasonable standard of behavior is poor judgment. A conscious decision to take action that results in a wantonly negligent violation of an employer's reasonable standard of behavior is poor judgment. A conscious decision not to comply with an unreasonable employer policy is not misconduct.

"(D)   Acts that violate the law, acts that are tantamount to unlawful conduct, acts that create irreparable

breaches of trust in the employment relationship or otherwise make a continued employment relationship impossible exceed mere poor judgment and do not fall within the exculpatory provisions or OAR 471-030-0038(3)."

We begin our analysis with claimant's first assignment of error. The board determined that claimant committed "misconduct" under OAR 471-030-0038(3)(a) because he violated employer's "timekeeping expectations" and that the violation was intentional "[a]s a matter of common sense and based on the employer's discussion with [claimant] in April 2006." Claimant argues that the record does not contain substantial evidence of employer's "timekeeping expectations" and that the board's findings do not explain what degree of personal use of work time violate the "standards of behavior which * * * employer has the right to expect" of him.

We agree that the record is insufficient to determine employer's "timekeeping expectations." We are required to set aside or remand the board's order if we determine that "the order is not supported by substantial evidence in the whole record." ORS 183.482(8)(c). Substantial evidence exists to support a finding "when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* Here, there was no evidence before the department or in the hearing record that employer had any policy regarding the creation of a time record for extended breaks or the failure to take a break. In terms of the rule, there was no evidence as to the "standard[ ] of behavior which an employer has the right to expect of an employee," much less a willful violation of that standard. OAR 471-030-0038(3)(a).

Moreover, claimant testified that he was often allowed to take an unreported break by combining two allowed breaks and that he often worked through breaks without reporting the additional time worked. That evidence suggests that employer lacked a policy pertaining to how to accurately report break time and that the policy on work-break reporting was subject to contextual exceptions. Because the evidence does not show the nature of the employer's policy on reporting breaks, the board's finding of an intentional violation of "timekeeping expectations" was not supported by substantial evidence in the whole record.

■ ■   The board's order was also inconsistent with the requirements of OAR 471-030-0038(1)(d), the rule defining "isolated instance of poor judgment" as an exception to "misconduct connected with work." As noted earlier, the board relied upon the department's determination in *Stuart*—that a failure to account for time away from work is not an "isolated instance of poor judgment"—to control the outcome in this case. In *Stuart*, the department set out tests for the meaning of "isolated instance of poor judgment" that later were codified in its rule at OAR 471-030-0038(1)(d). The department concluded that a failure to properly account for time was "tantamount to theft" under its announced tests because the claimant "effectively stole time and productivity from the employer." As noted earlier, OAR 471-030-0038(1)(d)(D), the rule presaged by *Stuart*, excludes from the definition of "isolated instances of poor judgment":

> "Acts that violate the law, acts that are tantamount to unlawful conduct, acts that create irreparable breaches of trust in the employment relationship or otherwise make a continued employment relationship impossible exceed mere poor judgment and do not fall within the exculpatory provisions of OAR 471-030-0038(3)."

Consequently, the issue is whether the department's understanding of "tantamount to unlawful conduct" that was announced in *Stuart* controls. We give deference to an agency's interpretation of its own rule if the interpretation is plausible and not inconsistent with the rule itself, the context of the rule, or with some other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). *See also Jones v. Employment Dept.*, 199 Or App 571, 576, 112 P3d 453 (2005) (department's unemployment compensation decision entitled to deference "to the extent that a department's authorized representative based [the] decision on an interpretation of the department's own rule defining misconduct").

   In *Stuart*, the department interpreted a draft version of OAR 471-030-0038(1)(d)(D) to classify intentional failure to account for employee time as "tantamount to theft" and not an "isolated instance of poor judgment." That interpretation, however, is inconsistent with the context of the

rule—specifically, our interpretation of "isolated instance of poor judgment" that preceded the adoption of the rule text. We explained in *Freeman v. Employment Dept.*, 195 Or App 417, 98 P3d 402 (2004), which was issued before the adoption of OAR 471-030-0038(1)(d) and after the *Stuart* decision, that determining the existence of an "isolated instance of poor judgment" requires an examination of the seriousness of the conduct and the claimant's mental state:

> "We do not suggest that the severity of conduct or its consequences is immaterial to the issue whether a claimant made a decision involving poor judgment. However, the determination whether an instance of poor judgment has occurred logically involves an examination of the claimant's decision-making process that led to the conduct or consequences, as well as the nature or gravity of the conduct or consequence itself."

*Freeman*, 195 Or App at 424 (citation omitted); *see also Callaway v. Employment Dept.*, 225 Or App 650, 654, 202 P3d 196 (2009); *Jones*, 199 Or App at 575-76.

■      In light of that legal context, the application of the rule requires "an examination of the claimant's decision-making process," *Freeman*, 195 Or App at 424, that led to the act "that violate[s] the law [or that is] tantamount to unlawful conduct," OAR 471-030-0038(1)(d)(D). Neither the board nor the department engaged in the inquiry prescribed in *Freeman*. That is, they did not examine claimant's decision-making process that led to the conduct that purportedly "violated the law or * * * was tantamount to unlawful conduct." Claimant testified that he believed it "all equaled out" because he rarely took his breaks and therefore "Nordstrom would still be ahead on this one because I never took my breaks." His belief that his employer had not lost anything was relevant to his intent to steal, even if that belief did not excuse his failure to report. An assessment of claimant's mental state is necessary in order to classify the conduct as unlawful or tantamount to being unlawful. Absent that determination, the issue of whether the conduct is an "isolated instance of poor judgment" remains unresolved. A decision denying benefits, but omitting findings on claimant's intent that are necessary to evaluate whether the conduct is

an "isolated instance of poor judgment," is not based on substantial reason.[3]

In sum, the board's order is not supported by substantial evidence because there was no proof of employer's timekeeping expectations and the relevant "standard of behavior" under OAR 471-030-0038(3)(a) to support the board's findings on "misconduct." The order lacks substantial reason because it fails to determine claimant's state of mind as part of its analysis of whether there was an "isolated instance of poor judgment." Because of that, the board's order is inconsistent with the department's rule under ORS 183.482(8)(b)(B). A remand is necessary so that the board can reconsider the result and its findings.[4]

■     A remand is also necessary to allow evidence that was improperly excluded by the ALJ. Claimant's second assignment of error contends that the ALJ erred in excluding evidence on the disciplinary actions of employer in other instances of unreported extended breaks. We review that assignment of error for whether the exclusion of evidence was erroneous and whether it "substantially prejudiced the rights" of claimant, ORS 183.450(1), in order to determine if the exclusion impaired "either the fairness of the proceedings or the correctness of the action." ORS 183.482(7).

The exclusion of the evidence was erroneous. That evidence was relevant to determine the "behavior which an employer has the right to expect of an employee" as well as the "employer's interest" under the definition of "misconduct" at OAR 471-030-0038(3)(a). The evidence was also material to whether the question of the lack of reporting created

---

[3] Our conclusion highlights the factual distinction between the case under review and *Stuart*. The claimant in *Stuart* left work for personal reasons without "clocking out." According to the department's findings in that case, the claimant "made a conscious decision not to comply with the employer's policy" and "effectively stole time and productivity from the employer." By contrast, claimant here contended that he did not intentionally deprive employer of his work time, because he had overtime credits to spend.

[4] The board also appeared to rely on an incorrect fact, the "employer's discussion with [claimant] in April 2006," in concluding that the misconduct in this case was intentional. On remand, the board can reconsider that part of its decision as well.

"irreparable breaches of trust in the employment relationship" under OAR 471-030-0038(1)(d)(D). Those issues were fundamental in the contested case, and the evidentiary exclusion prejudiced claimant and impaired the correctness of the action. *See Johnson v. Employment Dept.*, 191 Or App 222, 224, 81 P3d 730 (2003) (remand necessary when determination made on inadequate factual record). Claimant's remaining contentions in his second and third assignments of error are without merit.

Reversed and remanded for reconsideration.