Submitted August 7, 2009, affirmed April 28, 2010

Marlene N. CUMMINGS,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Hooker Creek Companies, LLC,
*Respondents.*

Employment Appeals Board
08AB2468; A141070

230 P3d 83

Kevin Carolan and Kevin Carolan, P.C., filed the brief for petitioner. Marlene Cummings filed the reply brief *pro se*.

Joan W. Reese and Garrett Hemann Robertson P.C. filed the brief for respondent Hooker Creek Companies LLC.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, waived appearance for respondent Employment Department.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

Claimant seeks judicial review of an order of the Employment Appeals Board (board) determining that she did not qualify for unemployment compensation benefits because she was discharged from her employment for misconduct. ORS 657.176(2)(a) disqualifies a person who "[h]as been discharged for misconduct connected with work" from receiving unemployment compensation benefits. OAR 471-030-0038(3) defines "misconduct" as a "willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" and excludes conduct from that definition if it is a "good faith error." Claimant contends that there is insufficient evidence in the administrative record to support the board's factual finding that her conduct was not authorized by employer, so as to qualify as a violation of employer's standards of behavior. She further asserts that the board's legal reasoning on the existence of any "good faith error" was erroneous. Based on a review of the board's finding of fact for substantial evidence and its legal conclusion for errors of law and substantial reason, *Freeman v. Employment Dept.,* 195 Or App 417, 98 P3d 402 (2004), we affirm.

Claimant was employed by Hooker Creek Companies, LLC (employer) as an accounts payable clerk from June 2005 to August 2008. In April 2008, claimant worked from home in order to attend to a newborn child. Employer provided claimant with a laptop and remote access to employer's software accounting programs. She was authorized to clock in and out of employer's timekeeping system from home. At the end of April, employer instructed claimant to work exclusively from the office beginning in July.

In July 2008, claimant and employer discussed changes to claimant's schedule; employer expected petitioner to work in the office three days per week and to work 32 hours per week or less.[1] Petitioner was allowed to keep her company laptop, and the access codes that she was given,

---

[1] The parties disagree about whether employer and petitioner agreed at that point that petitioner would work *exclusively* from the office.

which enabled her to log in to company programs and the timekeeping system, were not disabled.

Beginning with the start of claimant's new work schedule on July 15, on days when she worked, claimant used her company laptop and access codes to clock in from home before driving to work; claimant arrived at work about 30-45 minutes after registering commencement of work for that day. Claimant sent e-mails to her supervisor on her off days during this period and performed some work for employer while at home, although the parties dispute how much time she worked from home on her off days. Claimant did not record her time for any work performed on those days. On several occasions in August, claimant went to the bank or ran work-related errands after clocking out; on those occasions, claimant provided her supervisor with the amount of time she spent working after clocking out, and the supervisor adjusted claimant's time records to reflect the additional time.

On August 20, claimant's supervisor reviewed surveillance videotapes at claimant's workplace for reasons unrelated to claimant and saw footage of claimant coming in to work about 35 minutes after the time recorded as her start of work for that day. An expanded review of videotapes from other days revealed that claimant had signed in for work before arriving at work on six days between August 12 and August 20. Claimant's time records for that period included approximately four hours of time that claimant had not spent working in the office. On August 22, employer discharged claimant for falsifying her time clock entries.

An authorized representative of the Employment Department initially denied claimant unemployment benefits because she was discharged from work for misconduct under ORS 657.176(2)(a). Claimant requested a hearing before an administrative law judge, who concluded that she was discharged, but not for misconduct, and that she was therefore not disqualified from receiving benefits. Employer appealed and the board reversed, reasoning that claimant was discharged for misconduct under ORS 657.176(2)(a) and that claimant's conduct was not a good faith error under OAR 471-030-0038(3)(b). The board specifically found that

"employer did not authorize claimant to receive pay for time she spent commuting to work." The board also explained that

"[c]laimant's conduct cannot be excused as a good faith error under OAR 471-030-0038(3)(b). Claimant repeatedly asserted that the employer authorized her to falsify her time clock records, and argued that the employer's intent was demonstrated by the fact that she was allowed to retain possession of the employer's laptop computer and access to the employer's computer programs from home. The fact that the employer allowed claimant to retain the laptop computer does not outweigh the employer's expectation that claimant work exclusively in the office. Claimant did not demonstrate a sincere belief that employer authorized her to falsify her time clock records, nor did she have a factual basis for holding such a belief."

(Citations omitted.)

On review, claimant argues that the board erred in reaching those conclusions. Claimant contends that the board lacked substantial evidence to support its finding that she was not authorized to compensate for the time she worked from home on her off days by clocking in early on the days she came to the office. Alternatively, claimant argues that the board's conclusion that she did not believe in good faith that her conduct was authorized was not supported by substantial reason. *See Freeman*, 195 Or App at 424-25 (treating determination that the claimant's conduct was neither an isolated instance of poor judgment nor a good faith error as a conclusion of law). Employer responds that the board's finding of unauthorized conduct was supported by evidence in the record that employer required claimant to work exclusively from the office and did not authorize claimant to be paid for time spent commuting.

As noted earlier, a person who "[h]as been discharged for misconduct connected with work" is not entitled to unemployment insurance benefits. ORS 657.176(2)(a). The statutory phrase "misconduct connected with work" is a delegative term. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 228, 621 P2d 547 (1980) (delegative terms are those that "express non-completed legislation which the agency is given delegated authority to complete"). ORS 657.610(4)(b) confers authority on the department's director to adopt rules

to implement the statutes on unemployment insurance, including defining the meaning of "misconduct" under ORS 657.176(2)(a). OAR 471-030-0038 provides that definition, and we look to that rule to determine the meaning of "misconduct connected with work."

"Misconduct" is defined by OAR 471-030-0038(3)(a) as "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" as well as "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." An act that is misconduct, however, can be excused if it is a "good faith error[ ]."[2] OAR 471-030-0038(3)(b).

■■ Claimant first contends that the board's finding that her time recording conduct was not authorized by employer was not supported by substantial evidence in the record. The board found that "the employer's chief financial officer instructed claimant to work exclusively from the office beginning in July" and "claimant acknowledged that instruction." Additionally, the board adopted findings that claimant "clocked in her arrival to work before she left her home to commute to the workplace" and that claimant "did not notify employer of her actions." The board finally found that "the employer did not authorize claimant to clock in or receive pay for the time she spent commuting to work." Those findings formed the basis for the board's determination that claimant was discharged for misconduct connected with work under ORS 657.176(2)(a). We review the factual findings of an administrative agency made in a contested case for whether they are "supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

---

[2] OAR 471-030-0038(3) provides, in part:

"(a) * * * [A] willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. * * *

"(b) Isolated instances of poor judgment, *good faith errors,* unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience *are not misconduct.*"

(Emphasis added.)

Claimant points to several facts in the record that she believes are inconsistent with the board's findings, arguing that those facts would not permit a reasonable person, looking at the record as whole, to find as the board did. Specifically, claimant relies on evidence of her business communications with her supervisor from home and the facts that employer allowed her to retain the company laptop computer and did not deactivate the codes that allowed her to remotely access the company's timekeeping system. Claimant argues that that evidence shows that employer knew she was working from home and had the ability to clock in from home, evidence that claimant argues is in conflict with the board's finding that she was instructed to work only from the office. Claimant also points to e-mails between herself and her supervisor about her work schedule, arguing that the communications demonstrate an ongoing effort to work out a schedule, rather than an agreement that claimant would work exclusively from the office. Employer, in turn, emphasizes that the record shows that the time claimant registered in her time records was false and that the recording was false whether or not claimant was authorized to work from home or actually performed the work on some other day.

We agree that the record, as a whole, would permit a reasonable person to find, as the board did, that claimant's conduct was not authorized. Claimant's evidence that she performed work from home and that employer allowed her to keep the laptop and codes might support an inference that claimant was allowed to work from home during the period in question, even though other evidence in the record supports the opposite finding. But, that inference does not address the critical issue: whether claimant was allowed to work from home on an "off" day, and then, rather than clocking in remotely and accurately inputting *that time*, was permitted to clock in early on some *other* day.

The record is sufficiently developed with evidence of employer's timekeeping expectations. *See Smithee v. Employment Dept.*, 228 Or App 346, 353, 208 P3d 965 (2009) (holding that, where there is no evidence in the record that employer had any policy regarding the creation of a time record for breaks, there is no evidence as to the "standard[ ] of behavior which an employer has the right to expect of an

employee," much less a willful violation of that standard regarding employee's break time). Claimant's supervisor testified about employer's expectations with regard to clocking in for work, explaining the timekeeping policy and the few exceptions.

> "[Employees] were to get to work and, on their way to their desk or when they arrived at their desk, they were to clock in.
>
> "* * * * *
>
> "There are exceptions if it's authorized.
>
> "And * * * [claimant] was on maternity leave earlier this year, and therefore—she had a computer at home, and at the days that she worked from home * * * she would just log in and out from home. But at the end of April, we had decided on an agreement that she would start the beginning of July working in the office three days a week exclusively."

The administrative law judge asked, "What would you say would be the policy that—or expectation that [claimant] violated with regard to the—* * * time system * * *?" And claimant's supervisor responded that claimant violated the policy "[b]ecause of the way she had been clocking in without my knowledge or authorization." That evidence is refuted only by claimant's own testimony. On that record, a reasonable person could find that claimant's conduct in entering false time was not authorized and that she was discharged for misconduct.

■     Claimant next contends that the board's findings do not support its conclusion that her conduct should not be excused because of any "good faith" error by claimant. To determine whether the board expressed a substantial reason to conclude that claimant engaged in misconduct and not a good faith error, we must determine whether the board's "findings of fact logically lead to its conclusions of law." *Goin v. Employment Dept.*, 203 Or App 758, 763, 126 P3d 734 (2006).

The board's factual findings are discussed above. The board's critical conclusion of law was that

"[c]laimant's conduct cannot be excused as a good faith error under OAR 471-030-0038(3)(b). * * * The fact that the employer allowed claimant to retain the laptop computer does not outweigh the employer's expectation that claimant work exclusively in the office. Claimant did not demonstrate a *sincere* belief that employer authorized her to falsify her time clock records, nor did she have a factual basis for holding such a belief."

(Emphasis added.) That conclusion is logically related to the board 's factual findings, specifically, that "[c]laimant did not notify employer of her actions. The employer did not authorize claimant to receive pay for the time she spent commuting to work." The board also concluded that "[c]laimant's testimony was implausible" and "nonsensical" and that "[c]laimant had no reason to clock in early from home to compensate for time worked while off the clock and out of the office and failed to justify her actions with any reasonable or plausible explanation." The board also found that, given employer's practice of having claimant notify her supervisor of her time when she worked after hours so that the supervisor, *not claimant*, could manually adjust the time, it "is not plausible that claimant was authorized to clock in prior to commuting to work to compensate for after-hours work."

We explained the necessary reasoning to show lack of "good faith" sufficient to excuse "misconduct related to work" in *Goin* and *Freeman*. In *Goin*, the claimant had applied for medical leave, but failed to provide certification of her medical condition to her employer. The claimant thought the employer could obtain the necessary medical information independently because she had signed forms authorizing release of the information to the employer. The board concluded that the claimant "could not have held a good faith belief" that failing to provide the documentation would be acceptable. 203 Or App at 765. This court held that the board 's conclusion did "not follow logically from its findings of fact" because

"[a] 'good faith error' logically involves some sort of mistake made with the honest belief that one is acting rightly. Here, [the board] found that claimant, with some reason, made an incorrect assumption. It did not find that she acted with lack of honesty or belief in the rightness of her actions, nor

did it find that she needed to investigate further to determine what information employer had already received from [the doctor] and what information she needed to provide. It follows that [the board's] conclusion that claimant's conduct was not a good faith error lacks substantial reason."

*Id.* at 765-66 (citation omitted).

Similarly, in *Freeman,* the claimant was discharged because he failed to maintain a driver's license as required by his employer; the claimant's license was suspended for DUII. 195 Or App at 419. The claimant argued that he believed in good faith that he was not intoxicated when he committed the DUII offense, but the board concluded that " 'claimant could not have held a good faith belief that the employer would condone the conduct that led to the loss of claimant's driving privileges.' " *Id.* at 424 (quoting board order). We held that "the issue is whether it constituted a good-faith error for [claimant] to believe that he was not under the influence of intoxicants," *id.* at 425, and not whether the claimant believed the employer would condone conduct that resulted in losing his driving privileges. "Because [the board] failed to adequately address that issue," we held, its "conclusion [was] not supported by substantial reason." *Id.*

In contrast to *Goin,* where the board did not find a lack of honesty or belief of rightness, here the board concluded that the evidence did not show claimant's "sincere belief" that her conduct was authorized. And, as suggested in *Freeman*, the board did address the key issue: whether claimant believed in good faith that she was authorized to clock in for time spent commuting. The board found that claimant's belief was not sincere or plausible. Those findings support the conclusion that claimant did not make a "good faith error."

Affirmed.