Submitted December 6, 2013, reversed and remanded for reconsideration
March 12, 2014

Lisa R. FOX,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Kaiser Foundation Health,
*Respondents.*

Employment Appeals Board
13AB0829, 13AB0830; A154624

323 P3d 530

Lisa R. Fox filed the brief *pro se.*

Denise G. Fjordbeck, Attorney-in-Charge, waived appearance for respondent Employment Department.

No appearance for respondent Kaiser Foundation Health.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

On judicial review of an order of the Employment Appeals Board (the EAB), claimant challenges her disqualification from receipt of unemployment insurance benefits based on a discharge from her employment for misconduct, ORS 657.176(2)(a). The EAB set aside the decision of the administrative law judge (ALJ) allowing benefits. Because the EAB did not consider claimant's intent in regard to the incident leading to her termination, and the incident could be an isolated instance of poor judgment and not disqualifying misconduct, the EAB's order lacked substantial reason, and we reverse.

We take the facts, which are undisputed, from the EAB's order and the record. Kaiser Foundation Health (Kaiser) employed claimant as a pharmacy technician from August 1999 to January 29, 2013. Kaiser expected employees to clock in and start work no more than four minutes after their shift started, to accurately report their time worked, and to refrain from falsifying their time records. Claimant understood those expectations. On January 17, 2013, claimant's shift started at 6:30 a.m. When claimant arrived at Kaiser's parking lot, she was concerned that she would be late for work and parked her vehicle in a loading zone near her building to ensure that she clocked in by 6:34 a.m. After clocking in at 6:33 a.m., claimant left the building, moved her vehicle to a parking space, and then returned to the building. She then went to her work station and started work at 6:36 a.m. She worked subsequent shifts until she was terminated at the end of January. Kaiser's reason for terminating claimant was that she had violated its attendance policy on earlier occasions and that claimant had committed time-card fraud on January 17.

The Employment Department initially denied claimant's unemployment insurance benefits claim, concluding that Kaiser had discharged claimant for misconduct because claimant had committed time-card fraud on January 17, which was a willful violation of the standards of behavior that an employer has the right to expect from an employee. Claimant then appealed the department's decision and requested a hearing. The ALJ held a hearing at which

claimant and a Kaiser manager testified. The ALJ determined that Kaiser had not discharged claimant for misconduct, and therefore claimant was not disqualified from receiving benefits.

The ALJ believed claimant's testimony that she had not purposefully committed attendance violations in the past and that, on those prior occasions, she had "punched in as required," but "that the time-record system was new and gave no indication to an employee whether she had clocked in or out successfully or not, and that the corrective actions to which [Kaiser] testified came several weeks after the alleged incidents so that she had no meaningful opportunity to refute them at the time." As for the car-moving incident on January 17, the ALJ found that "[c]laimant had in the past sometimes parked in the loading zone without later moving her vehicle" and found credible claimant's testimony that she had made a snap decision to run out to move her car. The ALJ credited claimant's testimony that "she was unaware that her actions might be construed as time fraud" and that "her decision to move her vehicle was an instantaneous one without reflection." The ALJ further found that claimant "has time-management issues due to her formally diagnosed attention deficit order." The ALJ concluded that her conduct "lack[ed] the *mens rea* required by OAR 471-030-0038" for misconduct, that is, willful or wantonly negligent violation of the standards of behavior that an employer has a right to expect. OAR 471-030-0038(3)(a). The ALJ concluded that Kaiser had not met its burden to establish that claimant had committed time-card fraud and concluded that claimant's violation of the time policy by moving her car was an isolated instance of poor judgment.

Kaiser appealed the ALJ's order to the EAB. The EAB's findings focused solely on the car-moving incident on January 17, omitting any reference to claimant's testimony about attendance violations based on the new time-keeping system and the ALJ's findings as to that part of the basis for Kaiser's decision to terminate claimant's employment. As to the January 17 incident, the EAB omitted the ALJ's finding that claimant had sometimes parked and left her car in the loading zone and instead found that claimant "knew her vehicle likely would be towed or ticketed if she did not move

it from the loading zone." The EAB also omitted the ALJ's finding that claimant has attention-deficit disorder and had made an instantaneous decision to move her vehicle without reflection that day.

The EAB concluded that claimant had engaged in misconduct on January 17 based on her knowledge that Kaiser expected her to keep time accurately, reasoning as follows:

> "[C]laimant's understanding of the employer's expectation that she accurately report her time worked, and refrain from falsifying her time records is sufficient to show that she knew her conduct violated those expectations. Claimant's conscious failure to report her time worked accurately and her falsification of her time records therefore were willful, and not the result of a good faith error in her understanding of the employer's expectations. Regardless of whether claimant intended to commit fraud, her willful failure to report her time worked accurately and her falsification of her time records were acts of dishonesty sufficient to create an irreparable breach of trust in the employment relationship that made a continued relationship impossible. Claimant's conduct therefore exceeded mere poor judgment."

(Footnote omitted.) Accordingly, the EAB set aside the ALJ's decision and disqualified claimant from the receipt of benefits.

On judicial review, claimant contends that the ALJ was correct and that she did not commit disqualifying misconduct. Neither the EAB nor the employer has appeared and filed a brief on appeal. We review the EAB's findings for substantial evidence and review the EAB's order for substantial reason and errors of law. *Freeman v. Employment Dept.*, 195 Or App 417, 421, 98 P3d 402 (2004); *see also Drew v. PSRB*, 322 Or 491, 500, 909 P2d 1211 (1996) (stating that "[a]gencies also are required to demonstrate in their opinions the *reasoning* that leads the agency from the *facts* that it has found to the *conclusions* that it draws from those facts" (emphasis in original)).

Claimant does not dispute the legal standards that apply to a discharge case. The employer has the burden

to establish misconduct by a preponderance of evidence. *Babcock v. Employment Div.*, 25 Or App 661, 664, 550 P2d 1233 (1976). Under ORS 657.176(2)(a), an individual who "[h]as been discharged for misconduct connected with work" is not entitled to receive unemployment insurance benefits. "Misconduct" is defined in OAR 471-030-0038(3)(a) as "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" as well as "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." However, an act is not "misconduct" if it is, among other things, an isolated instance of poor judgment. OAR 471-030-0038(3)(b). The Employment Department has defined "isolated instance of poor judgment" in OAR 471-030-0038(1)(d) as follows:

"As used in this rule, the following standards apply to determine whether an 'isolated instance of poor judgment' occurred:

"(A) The act must be isolated. The exercise of poor judgment must be a single or infrequent occurrence rather than a repeated act or pattern of other willful or wantonly negligent behavior.

"(B) The act must involve judgment. A judgment is an evaluation resulting from discernment and comparison. Every conscious decision to take an action (to act or not to act) in the context of an employment relationship is a judgment for purposes of OAR 471-030-0038(3).

"(C) The act must involve poor judgment. A decision to willfully violate an employer's reasonable standard of behavior is poor judgment. A conscious decision to take action that results in a wantonly negligent violation of an employer's reasonable standard of behavior is poor judgment. A conscious decision not to comply with an unreasonable employer policy is not misconduct."

In contrast, "[a]cts that violate the law, acts that are tantamount to unlawful conduct, acts that create irreparable breaches of trust in the employment relationship or otherwise make a continued employment relationship impossible exceed mere poor judgment and do not fall within the exculpatory provisions of OAR 471-030-0038(3)." OAR 471-030-0038(1)(d)(D). Determining the existence of an "isolated

instance of poor judgment" requires "an examination of the seriousness of the asserted misconduct and the claimant's mental state" or "decision-making process that led to the conduct." *Dawson v. Employment Dept.*, 251 Or App 379, 386 n 2, 283 P3d 434 (2012) (internal quotation marks omitted).

The EAB characterized claimant's running out to move her car while "on the clock" for three minutes as "falsification of her time records" and concluded that her act created "an irreparable breach of trust in the employment relationship that made a continued relationship impossible" under OAR 471-030-0038(1)(d)(D). Claimant disputes that she falsified anything or acted with an intent to defraud Kaiser and contends that her conduct on January 17 was an isolated instance of poor judgment under OAR 471-030-0038(3)(b). The issue we decide on review is whether the EAB's conclusion that claimant's conduct created "an irreparable breach of trust in the employment relationship that made a continued relationship impossible" is supported by substantial reason.

"A decision denying benefits, but omitting findings on [the] claimant's intent that are necessary to evaluate whether the conduct is an 'isolated instance of poor judgment,' is not based on substantial reason." *Smithee v. Employment Dept.*, 228 Or App 346, 355-56, 208 P3d 965 (2009). In *Smithee*, the claimant "understood that [the] employer expected him to take rest and meal breaks that did not exceed the amount of authorized time" and understood that the employer "required employees to clock in and out at the beginning and the end of their shifts and meal breaks, but not for 10-minute rest breaks." *Id.* at 348. The claimant did not report a 36-minute break to his employer when he was delayed on a personal errand. *Id.* at 349. We held that the EAB's order lacked substantial reason because it did not include findings as to the claimant's intent when he decided not to report the break—findings that were relevant to whether the claimant's conduct could be considered "unlawful" or "tantamount to being unlawful" under OAR 471-030-0038(1)(d)(D). *Id.* at 355. We rejected the EAB's reasoning that the claimant's conscious decision not to report his overlong break was necessarily conduct tantamount to theft, without an examination of intent. *Id.* at 351, 355.

Similarly, the EAB in this case did not include findings concerning claimant's intent, and those findings are relevant to whether claimant's conduct created "an irreparable breach of trust in the employment relationship that made a continued relationship impossible" under OAR 471-030-0038(1)(d)(D). As noted, the ALJ, in contrast, made findings on intent and credited claimant's testimony concerning her decision to move her car, as well as noting that claimant suffers from attention-deficit disorder. In its order, the EAB appeared to dismiss the need for findings regarding claimant's intent by concluding that her conduct necessarily amounted to an irreparable breach of trust because she knew that she was supposed to keep accurate time records. That knowledge, however, does not obviate the need to examine claimant's decision-making process, as *Smithee* demonstrates. *See also Thomas v. Employment Division*, 90 Or App 454, 457, 752 P2d 1248 (1988) ("Submission of a falsified receipt does not in and of itself constitute misconduct.").

Reversed and remanded for reconsideration.